SETH WOODS Individually, and SETH WOODS as Administrator of the Estate of MINNIE WOODS, Deceased, ROBERT B. WOODS, H. T. WOODS, CLAUDE WOODS, MARIE SCHAFER HISER and ROSCOE E. SCHAFER, Respondents and Appellants, v. LESTER CANTRELL and FRANCES H. CANTRELL, Appellants and Respondents.—Nos. 39808 and 39869.—201 S. W. (2d) 311.

Division One, April 21, 1947.

*Harold T. Lincoln, Frank B. Williams* and *Joseph N. Brown* for appellants.

*Fred A. Moon* for respondents.

 BRADLEY, C.—This cause is in equity and affects the title to 65 acres of land in Greene County, near Springfield, and the title to or proceeds of some personal property, live stock, farming equipment, etc. The petition upon which the cause was tried is in three counts. The first count asks for a decree that defendants held title to the land and personal property in trust for plaintiffs; the second count asks that defendants' deed to the land and the bill of sale to the personal property be declared to be equitable mortgages and that plaintiffs be permitted to redeem; the third count asks that deed to the land and the bill of sale be set aside. Each count asked for an accounting "between plaintiffs and defendants of and for the profits, proceeds and income derived by said defendant from said tract of land and the livestock aforesaid; that the court decree that he holds said funds and property in trust for these plaintiffs; that he account to them for their share of said profits." The answer denies that plaintiffs have any interest in the land and personal property, and alleges that defendants, who are husband and wife, held title to the land by the entirety, and that defendant Lester Cantrell held title to the personal property.

We might here give the background of the cause. Mrs. Minnie Woods, deceased, on September 21, 1940, owned all the property involved, and was the mother of all the plaintiffs, as we infer, and the mother of defendant Frances H. Cantrell. Mrs. Woods, a widow and 76 years old, was in financial straits; her land and personal property were encumbered. She and her son, plaintiff Seth.

Woods, talked over her financial troubles with her son in law, defendant Lester Cantrell, and an agreement was reached but not reduced to writing. The agreement, as claimed by plaintiffs, is pleaded in each count of the petition.

The second and third counts of the petition adopt by reference paragraphs 1 to 16 inclusive of the first count, all of the factual allegations, and except the prayer, the three counts are practically identical. Plaintiffs pleaded in each count that in the agreement reached defendant Lester Cantrell "promised Minnie. Woods and Seth Woods that upon Minnie Woods conveying said lands to him and likewise transferring said personal property to him, he would, in this manner, refinance the proposition (debts of Mrs. Woods) and would hold the title to the said lands and said personal property for the benefit of Minnie Woods and Seth Woods until said lands could be sold without sacrifice and at a sufficient price so that the encumbrances thereon could be paid and that the balance of the funds so obtained, and any profits and proceeds arising from the operation of said farm or from said personal property should be divided equally between Minnie Woods and Seth Woods on the one hand, and defendant Lester Cantrell on the other, and that in the meantime plaintiff Seth Woods was to operate said farm." September 21, 1940, Mrs. Woods conveyed the land by warranty deed to defendants, and by bill of sale conveyed the personal property to defendant Lester Cantrell. The deed to the land recited a consideration of "one dollar and other valuable considerations", and the consideration recited in the bill of sale was that defendant Lester Cantrell was to pay off or settle "all of the indebtedness as scheduled in bankruptcy proceedings by Minnie Woods." Mrs. Woods had obtained a moratorium order under the Frazier-Lemke act as to her secured debts and the moratorium was about to expire and she was threatened with foreclosure.

December 4, 1940, a second bill of sale was executed in which 3 of Mrs. Woods' sons, including Seth, joined to release any interest they might have in the personal property described in the bill of sale. Plaintiff Seth Woods was in charge of the farm and personal property at the time of the execution of the deed and bills of sale and remained in charge until December 18, 1940, when defendant Lester Cantrell took over. Seth says he was frightened away by defendant Lester Cantrell and one Terry whom Lester Cantrell placed in charge. Defendant Lester Cantrell refinanced the secured obligations of Mrs. Woods by mortgages on the land in question and on a farm of his own in Webster County, and by giving a mortgage on the cattle on the farm and the cattle on his Webster County farm. He settled Mrs. Woods' unsecured debts after getting a reduction of about fifty percent on these, and paid off his refinancing obligations in 1943.

Mrs. Woods, it would seem, ascertained that Lester Cantrell was claiming to be absolute owner of all the property conveyed to him,

198

while she claimed as appears in the quote from the pleadings, supra. And on April 25, 1941, Mrs. Woods and Seth commenced this cause by filing petition against defendant Lester Cantrell only. Mrs. Woods died October 30, 1941, and thereafter Mrs. Cantrell was made a party defendant and other parties were made plaintiffs. The second amended petition on which the cause was tried was filed May 4, 1945.

The trial court found for defendants and against plaintiffs on the first count, and for plaintiffs and against defendants on the second count, but made no specific finding as to the third count. And the court found that defendant Lester Cantrell had expended $7,782 in discharging the debts of Minnie Woods, his grantor, but that he had realized $1800 from the personal property, and gave him a lien on the land for the difference, $5,982. And the court ordered an accounting. The land, at the time of the deed September 21, 1940, the evidence showed, was worth $200 per acre. The judgment recites, in addition to the adjudication that the deed ▮▮▮▮ and bill of sale were mortgages, that plaintiff Seth Woods be restored to the occupancy and management of the land; "that the rents and profits arising therefrom be divided equally between plaintiff Seth Woods and the other plaintiffs herein on the one hand and Lester J. Cantrell on the other; that said Seth Woods continue in the management and control of said real estate until such time as a sale of said real estate shall be made; that upon sale of such real estate the said Lester Cantrell shall be reimbursed the said sum of $5,982.00; that any sum realized from such sale above said sum of $5,982.00 be divided equally between plaintiff Seth Woods and the other plaintiffs on the one hand and Lester Cantrell on the other; that an accounting between the parties be had to determine the rents and profits realized from the operation of said real estate by said Lester Cantrell and divided as hereinabove set out."

The judgment was rendered September 15, 1945; defendants filed motion for a new trial September 24th. December 29th, the court made an order overruling defendants' motion for a new trial and at that time the judgment was spread upon the judgment record. January 7, 1946, defendants filed notice of appeal and the transcript was filed here July 5th. January 2, 1946, after the rendition of the judgment on September 15, 1945, plaintiffs filed a motion to "amend or modify" the judgment, claiming that the judgment on the judgment record was incomplete and inconsistent with the judge's docket note of the judgment and the clerk's minutes thereof. The docket note is "Judgment for plaintiff finding deed is mortgage. Amount of debt secured, $5,982.00." The clerk's minute of the judgment follows:

"Now on this day (September 15th) this cause comes on for judgment, the evidence and arguments of counsel having been heretofore heard by the court and the matter taken under advisement. It is

this day ordered and decreed by the court that the deed dated September 21, 1940, from Minnie E. Woods to Lester Cantrell and Frances H. Cantrell, his wife, be declared to be a mortgage or security to protect the defendants for debts and incumbrances discharged on the property involved; that the transaction originated in this indebtedness by Minnie Woods and that the parties plaintiff, successors of Minnie Woods, and Lester Cantrell and Frances H. Cantrell are joint beneficiaries of any equities in the property after the defendants are reimbursed for the net total outlay on the above accounts (debts of Mrs. Woods) which the court finds to be $5,982.00. And the court orders that an accounting be taken to determine the state of further indebtedness between the parties covering rents, profits and income derived from said land.''

Also, on January 2d, plaintiffs filed motion for a new trial. February 8, 1946, the trial court made an order striking from the files both of these motions, plaintiffs' motion to modify and their motion for a new trial, because they were not timely filed. February 18th, plaintiffs filed notice of appeal ''from the court's order striking from the files plaintiffs' motion for a new trial and plaintiffs' after judgment motion to modify the final judgment entered in this action on the 9th (8th) day of February, 1946.'' Plaintiffs' appeal is No. 39,869 and defendants' is No. 39,808. Plaintiffs have filed motion to dismiss defendants' appeal, and defendants have filed motion to dismiss plaintiffs' appeal.

We first dispose of plaintiffs' motion to dismiss defendants' appeal. As stated, the judgment was rendered September 15, 1945, and that on September 24th, defendants timely filed motion for a new trial. See Sec. 116, Laws 1943, p. 388, Mo. R. S. A., Sec. 847.116. New code, Sec. 118, Laws 1943, p. 389, Mo. R. S. A., Sec. 847.118, provides that ''if the motion for new trial is not passed on within 90 days after the motion is filed, it is deemed denied for all purposes.'' As stated, defendants' motion for a new trial was overruled December 29th, which was 95 days after the motion was filed. The motion, by operation of law, was denied, overruled, 5 days before the court order overruling it, hence the court order had no effect for appeal purposes. Defendants' motion for a new trial not having been passed on in 90 days, the judgment became final December 23rd on the lapse of the 90 days after filing motion for a new trial on September 24th. New code, Sec. 129, Laws 1943, p. 390, Mo. R. S. A., Sec. 847.129, provides that no appeal ''shall be effective unless the notice of appeal shall be filed not later than 10 days after the judgment or order appealed from becomes final.'' Defendants' notice of appeal, as stated, was filed January 7th, which was 15 days after the judgment became final, hence the notice of appeal was without effect. McPike v. St. Louis County Bank (Mo. App.), 193 S. W. (2d) 961.

We might say that defendants, so far as appears here, do not claim that their appeal is effective. They have not filed here any brief or suggestions on any question except their motion to dismiss plaintiffs' appeal. Defendants' appeal should be dismissed and it is so ordered.

Should plaintiffs' appeal be dismissed? As will be noted, supra, plaintiffs' appeal is from the order striking from the files their motion for a new trial and their motion to modify the judgment. And, as appears, these motions were filed January 2d, after rendition of the judgment on September 15th. New code, Sec. 126, Laws 1943, p. 390, Mo. R. S. A., Sec. 847.126, on the subject of appeals, provides:

"Who may appeal to court having appellate jurisdiction:—Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the Constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction from any order granting a new trial, or order refusing to revoke, modify, or change an interlocutory order appointing a receiver or receivers, or dissolving an injunction, or from any interlocutory judgment in actions of partition which determine the rights of the parties, or from any final judgment in the case or from any special order after final judgment in the cause; but a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case."

Sec. 126 does not authorize an appeal from an order overruling a motion for new trial; that order merely makes the judgment final and the appeal must be from the judgment. Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S. W. (2d) 657. Certainly the same rule would apply to an order overruling a motion to modify under Sec. 114(c). All these after trial motions are put in the same category of Rules 3.23 and 3.24. Certainly, if an order overruling such motions is not an appealable order, then an order striking such motions would not be appealable either; and we rule that it is not.

It is the spirit of the new code to sustain an appeal which is actually an attempt in good faith to appeal from a final judgment even though some other unappealable order is inadvertently designated therein. Weller v. Hayes Truck Lines, supra. But plaintiffs herein do not contend that they attempted to or even desired to appeal from the final judgment. However, if plaintiffs' attempted appeal could be construed as an attempt to appeal from the final judgment, the question arises, Have plaintiffs timely taken the necessary steps for such appeal? The judgment rendered September 15th was not, as stated, entered on the judgment record until December 29th. On February 8th, when plaintiffs' motion for a new trial and their motion to modify the judgment were stricken from the files, the trial judge

filed a memorandum giving his view of the situation. In this memorandum is the following:

"The judgment entry in extenso, prepared by the court and spread of record on December 29, 1945, did not in the opinion of the court, dispose of any issues not disposed of by the brief entry of September 15, 1945. That entry as already stated by necessary implication, disposes of counts 1 and 3 against plaintiffs, for the reason that the court's entry of judgment of September 15, declaring the purported deed to be a mortgage in equity, was necessarily a finding that it was not held in trust as charged by plaintiffs in count 1 and that it was not set aside in toto as prayed in count 3. The court is therefore unable to see how plaintiffs have any right to file or have considered their recent motions. They are belated if subsection (c) of section 114 and section 116 of the new code have any meaning."

Plaintiffs in their brief say: "It was error for the court to find the issues against plaintiffs and in favor of defendants on the first count of plaintiffs' petition, and also to order in the same journal entry (judgment record) that the first count of plaintiffs' petition be dismissed. The finding and the order are repugnant and cancel each other, and leave the first count undisposed of. When the court pronounced judgment from the bench on September 15, 1945, it was only upon the second count of plaintiffs' petition and was for plaintiffs, finding the deed was a mortgage. This left the first and third counts undisposed of by the court at that time and amounted to an interlocutory judgment in the cause. The court erred in assuming that this was a final, rather than an interlocutory judgment." This argument is inconsistent with plaintiffs' position on their motion to dismiss defendants' appeal which was on the ground that judgment was rendered on September 15th and became final 90 days after their motion for a new trial was filed.

We think the trial court was correct in his view of the situation as appears in the excerpt, supra, quoted from the memorandum. If the deed was a mortgage, then the title to the land was not held in trust by defendants, and besides the judgment spread upon the judgment record specifically dismissed the first count. And if the court had set aside the deed in toto as plaintiffs asked in the third count, then the deed would have been a nullity and therefore could not have remained as a mortgage. The third count might have been dismissed, but the fact that the judgment did not specifically so recite does not leave the third count undisposed of in the sense that some vital issue or party remained undisposed of which would make an appeal premature, such as in Magee v. Mercantile-Commerce Bank & Trust Co., 339 Mo. 559, 98 S. W. (2d) 614; S. S. Kresge Co. v. Shankman et al. (Mo. App.), 194 S. W. (2d) 716, and other like cases not necessary to cite.

Sec. 114(c) of the new code, Laws 1943, p. 388, Mo. R. S. A., Sec. 847.114(c) referred to in the memorandum of the trial judge, deals with cases tried without a jury, and provides that "upon motion of a party made not later than 10 days after entry of judgment the court may amend the judgment and opinion. The motion may be made with a motion for a new trial." And Sec. 116 of the new code also referred to in the memorandum, provides that a motion for a new trial "shall be filed not later than 10 days after the entry of the judgment." Plaintiffs, in the brief, say that under code Sec. 116, "the time for filing a motion for a new trial is not fixed by the date of the pronouncement of the judgment, but by the date of the entry of the judgment", and plaintiffs say that the judgment was not *entered* until December 29th, and that since their motion for a new trial and their motion to modify were filed January 2d, these motions were timely filed. The new code does not contain the term *pronouncement* in dealing with judgments. The terms used are *render* and *entry*. In jury trials the judgment must be *rendered* and *entered* "as of the day" of the verdict. New code, Sec. 116; 2 Carr's Mo. Civil Procedure, Sec. 854, p. 28. But in causes tried without a jury judgment may be rendered "at or after the trial." New code, Sec. 114(b); 1 Carr's Mo. Civil Procedure, Sec. 813, p. 878. But if a motion for a new trial is timely filed in any cause, the judgment is not final until the motion for a new trial is "deemed denied" under new code, Sec. 118, after the lapse of 90 days from date of filing or is overruled prior to the lapse of the 90 days.

This cause being tried without a jury, the court, under Sec. 114(b) of the new code could have rendered the judgment after the day of the trial, but such was not done. The judgment was *rendered* and *entered* September 15th. It is true that the formal judgment was not prepared in extenso and spread of record on the judgment record until December 29th, but that was merely completing the record of the judgment and would not make plaintiffs' motions timely. To hold that plaintiffs' motions were timely filed would be contrary to the provision of Secs. 114(c) and 116 of the new code because we hold that the time for filing must be computed from September 15th.

Plaintiffs' motion for a new trial and their motion to modify were not timely filed and did not suspend the finality of the judgment of September 15, 1945. Therefore, their notice of appeal was too late and their appeal should be dismissed. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, *C.,* is adopted as the opinion of the court. All the judges concur.