VALASCO EDWARD STARR and LILLIAN PAULINE STARR, Plaintiffs-Respondents, v. D. GARTH MITCHELL, Defendant-Appellant, No. 42176—237 S. W. (2d) 123.

Division One, March 12, 1951.

*Robert E. Brown* for appellant.

*Carstarphen & Harvey* for respondents.

[124] VAN OSDOL, C.—In this action the trial court cancelled and set aside a trustee's deed made pursuant to a sale under a deed of trust, and granted other and further relief. Defendant attempted to perfect an appeal to the St. Louis Court of Appeals. However, the St. Louis Court of Appeals transferred the cause to this court on the ground the case is one involving title to real estate. Starr v. Mitchell, Mo. App., 231 S. W. (2d) 299; Cordia v. Matthes, Mo. App., 122 S. W. (2d) 32, id., 344 Mo. 1059, 130 S. W. (2d) 597; Section 3, Article V, Constitution of Missouri, 1945, Mo. R. S. A. Const. Art. V, § 3.

The St. Louis Court of Appeals correctly summarized the trial issues and the general effect of the trial court's judgment and decree in Starr v. Mitchell, supra, 231 S. W. (2d) at page 300. And the St. Louis Court of Appeals correctly stated that the transcript of the record shows the judgment was rendered April 8, 1949; that the timely filed motion for a new trial was overruled May 28, 1949; and that the defendant filed an affidavit for appeal, such as was employed under the former practice, on June 10, 1949, more than ten days after May 28th. The clerk of the trial court had also transmitted to the St. Louis Court of Appeals a copy of a notice of appeal, signed by defendant's counsel, dated and filed in the trial court June 10, 1949, in which notice it was stated the appeal was from the final judgment and order overruling the motion for a new trial, "entered in this action on the 31st day of May, 1949."

As stated, the transcript of the record recites that the motion for a new trial was overruled May 28, 1949. There had been no explanation of the discrepancy as to the date of the overruling of the motion for a new trial (on which date the trial court's judgment and decree, in the instant case, became final for the purpose of ascertaining the time within which an appeal might be taken, Supreme Court Rule 3.24), as such date is recited in the transcript of the record (May 28, 1949), and as stated in defendant's notice of appeal (May 31, 1949).

It is a mandatory requirement that a notice of appeal be filed "not later than ten days after the judgment or order appealed from becomes final" (Section 129, Civil Code of Missouri, Laws of Missouri, [125] 1943, p. 353 at pages 390-391, Mo. R. S. A. § 847.129, Section 512.050 R. S. 1949), except where the ten days have expired, and the filing of a notice of appeal, within six months from the date of final judgment, has been permitted by a special order of the appropriate appellate court (Section 130, Civil Code of Missouri, Laws of Missouri, 1943, p. 353 at page 391, Mo. R. S. A. § 847.130, Section 512.060 R. S. 1949). The timely filing of a notice of appeal

is the statutory "vital step" for perfecting an appeal, and is jurisdictional. Woods v. Cantrell, 356 Mo. 194, 201 S. W. (2d) 311; Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S. W. (2d) 657; Krummel v. Hintz, Mo. App., 222 S. W. (2d) 574; Sections 512.050 and 512.060, supra.

This court, on its own initiative, has made inquiry of the clerk of the trial court as to the correct date of the overruling of the motion for a new trial and this court has ascertained that the date, May 28, 1949, was an inadvertent misstatement in the record; and that the motion for new trial was actually overruled May 31, 1949. We have directed the correction of the misstatement, and the correction has been certified to the clerk of the trial court pursuant to Section 135, Civil Code of Missouri, Laws of Missouri, 1943, p. 353 at pages 393-394, as amended by repeal and re-enactment, Vol. II, Laws of Missouri, 1947, pp. 219-220, Mo. R. S. A. § 847.135, Section 512.110 R. S. 1949.

Plaintiffs-respondents, Starr and wife, bought the described 140 acres of land involved in the instant action from defendant-appellant, Mitchell, in December 1946. The transaction was handled by appellant and appellant's agent at Woodhull, Illinois, near which city respondents then lived. Respondents undertook to pay appellant $5600 for the described land. The purchase price was represented by a note of $3000 secured by a deed of trust, to Marion Voepel and wife; two $500 notes, one to appellant and one to appellant's partner, John T. White (these two notes were due five years after date, and bore 5% interest); and the balance, $1600, was paid in cash or personalty. The two $500 notes were secured by one deed of trust, the lien of which was subsequent to that of the deed of trust securing the $3000 note payable to Voepel and wife.

As inducements for the transaction appellant had told respondents that he would help them in getting "started in the farm operations," and would assist them in getting a government loan by which respondents would be able to buy livestock for use in operating the farm. The payment of the $1600 on the purchase price had nearly exhausted respondents' resources, and appellant advanced respondents sums of money for transportation from Illinois, for farming operations, and for living expenses. There was an accounting and settlement as to these advances, respondents paying appellant cash in part; but a balance of $500 was represented by respondents' note dated April 28, 1947, due six months after date. This note was unpaid at the time of trial. The note was secured by a chattel mortgage on respondents' automobile.

Respondents continued to farm the described lands until the spring of 1948, having put in twelve acres of wheat in the fall of 1947. Respondents with appellant's assistance had negotiated a government loan. However, in February 1948, respondents asked

appellant to advance additional funds to assist in the farming operations and, being unable to procure additional moneys, respondents felt obliged to give up their personal operation of the farm. Respondent Starr rented the farm to one Chatfield, and the Starr family returned to Illinois. (When the farm was rented to Chatfield, respondent Starr agreed to have the house wired for electricity. Acting for respondents, appellant had the house wired and, at the time of trial, respondents had not repaid appellant the sum of $136 which appellant had paid out in making this improvement.) Before returning to Illinois, respondents were required to settle the government loan and appellant advanced $252 to assist in paying off the loan. Respondents gave appellant their note for that amount secured by a chattel mortgage on the growing wheat. The note was payable in installments of $25 per month. Respondents had paid six installments on this note, leaving an unpaid balance of $102 principal at the time of trial.

[126] When the Starr family returned to Illinois, there was an arrangement entered into by which appellant was to act for respondents in matters pertaining to respondents' farm. There was a conflict in the testimony relating to the terms of this agreement. Appellant testified that "Mr. Starr turned the rent contract and everything over to me and I was to fulfill his part * * *. Mr. Starr came to me and told me to see that the wiring was put in." Respondent Starr testified that appellant "was to look after that wheat and see that it was harvested, put in on the market and take that money and put it in the bank in a joint account to his and my credit. Then I was to come down here in September and make settlement and apply that money to the two real estate notes, the. interest." Respondents' son testified it was agreed that, in September, the wheat money was to be used to pay the interest on the two $500 notes "on the place and they were going to take the balance of it and apply on the principal." (Appellant undertook to apply the net proceeds of the sale of the wheat on the $500 note of April 28, 1947.)

In late March or in April 1948, after the Starr family had gone back to Illinois, appellant purchased from his former partner the $500 (White) note for the sum of $250. And in late July 1948, appellant directed foreclosure of deed of trust (the first publication of the notice of sale in foreclosure was on July 28th), and bought in the land at the foreclosure sale, although at the time appellant had in his hands the sum of $402.82 net proceeds of the harvested wheat crop; and appellant had on July 20, 1948, written respondent Starr as follows, "When you left here I did not think it possible for you to hold the farm and catch up but now I have changed my mind if you can make payments of $25 monthly until next April and let me rent the farm to Mr. Chatfield for next yr. I will guarantee that the farm will be up to date and your interest and taxes paid

to first of Jan. 1950, and your notes to me together with electricity in fact everything paid until that time * * *. If you accept this proposition keep this letter as it will be your contract with me, as I might pass away before that time and I will keep your letter of acceptance the same way. Let me hear from you as soon as possible."

The trial court found that appellant was respondents' agent "in handling the farm and in the purchase of the note from John T. White for the net sum of $250, prior to the institution of the foreclosure proceedings * *. *". The court cancelled the trustee's deed; and by its decree, the court applied the amount, $402.82, net proceeds of the wheat crop, to the payment of the White note; to the payment of $102 balance of the $252 note secured by mortgage on the wheat; and the balance, $50, to the payment of the interest on the (appellant's) $500 note secured by the second mortgage on the described land. The trial court made no particularized finding upon the issues of counterclaim. Title was adjudged in respondents "as prior to the attempted foreclosure," and issues of damages and accounting were held to have been abandoned without prejudice.

■ In the review of the instant case, an equitable action, the appellate court determines the cause *de novo,* weighing the evidence introduced upon the factual issues; but the appellate court usually defers to the findings of the trial chancellor where there was conflicting verbal testimony involving the judging of the credibility of the witnesses who appeared before him. Cobble v. Garrison, Mo. Sup., 219 S. W. 2d 393.

■ The evidence tends to show appellant, although aged, was shrewd and experienced; and we infer respondents were not accustomed to handling business transactions such as are involved in the instant case. In conversations throughout the months respondents were in Missouri, appellant advised respondents relating to their farming operations. It is true that respondents and appellant bore a debtor and creditor relation. But throughout the time respondents were in Missouri and until after appellant's letter of July 20th, the conduct of appellant was such as would lead respondents to believe appellant was [127] acting in the protection and furtherance of all of their mutual interests. There are ample and substantial bases for the trial court's view that appellant had undertaken, as early as March 1948, to act for respondents in their absence and so preserve their resources that they could, in September, meet and satisfy the delinquencies on their indebtedness and retain and protect the ownership of their farm.

The facts and circumstances indicate a confidence reposed by respondents in appellant. The confidence was justified by appellant's conduct which was such as would lead respondents to believe appellant was acting and would act not only in his own behalf, but in the interest of respondents. Appellant's relations with respondents were

not wholly and strictly agential in character; but it would seem respondents were justified in believing appellant would act for them to the extent and within the scope of respondents' very apparent purpose to utilize their available resources in retaining title to their farm. In equity and good conscience, the confidence reposed required appellant to act in good faith and with due regard to the interests of respondents. Liddell v. Lee, Mo. Sup., 159 S. W. (2d) 769; 36 C. J. S., Fiduciary, p. 743.

No word of appellant was ever communicated to respondents by which they could have known that appellant was not exercising forbearance, or was intending to foreclose and exact the immediate and full payment of respondents' indebtedness. Appellant's conduct was such as would reasonably indicate the contrary intention. The language of appellant's letter of July 20th, eight days before the first publication of the notice of sale in foreclosure, is an exemplification of the evidence, as disclosed by the whole record, intending to show that appellant was at least pretending to respondents that he was acting and would act in their interest.

In the circumstances, it would be oppressive and inequitable to permit appellant to profit by, or to exploit to his own advantage his own act within the scope of his fiduciary relationship by exacting and enforcing the payment of the White note in full. Compare Witte v. Storm, 236 Mo. 470, 139 S. W. 384.

We do not overlook the fact that as early as March 1948, prior to appellant's purchase of the White note in late March or in April of that year, appellant, according to his own admission, had undertaken to act for respondents in fulfilling the rental contract with the renter, Chatfield; and, according to the testimony of respondent Starr, there was a definite understanding the wheat money was to be utilized in paying the interest on the "real estate notes" at a contemplated settlement in September. (Appellant did harvest and sell the wheat, but attempted to apply the proceeds to the $500 note secured by mortgage on respondents' car.) It is observed that the delinquency of these very interest items was the default relied upon by appellant in directing the sale in foreclosure; yet appellant had in his hands respondents' resources, the proceeds of the sale of wheat, sufficient to reimburse himself for the $250 paid in the purchase of the White note; to pay the interest on his own "real estate" note; and to satisfy the balance, $102, remaining unpaid on the note secured by the chattel mortgage on the wheat crop. In so applying the wheat money, the trial court was substantially following the arrangement of the parties as stated in the testimony of respondent Starr. The debtors, Starr and wife, had the right to select and, by respondent Starr's understanding and arrangement with appellant in March, the debtors

did select the particular debts upon which the wheat money was to be applied.

Giving regard to the rule of deference to the trial court's findings, we have no hesitancy in affirming the trial court's judgment and decree cancelling the trustee's deed, and the trial court's manner of applying the proceeds of the sale of wheat to the protection of respondents' title.

As stated, the trial court did not make a specific finding and judgment on appellant's counterclaim. Defendant-appellant, by counterclaim, had prayed for a money judgment upon all of respondents' admitted indebtedness to him, which admitted indebtedness [128] included the indebtedness which was ordered satisfied or funded by the trial court's judgment, but defendant-appellant had also included in his counterclaim and had sought a money judgment on the overdue $500 note of April 28, 1947, and had sought recovery of $136, the amount expended by appellant in wiring respondents' house. Defendant-appellant had also prayed "for a general accounting of the outstanding indebtedness between plaintiff and defendant." Appellant suggests that the appeal, which he was obliged to take because the judgment was apparently final, was premature. He says the judgment did not dispose of all issues in the cause and, consequently, the judgment was not, in fact, final and appealable. See Deeds v. Foster, Mo. Sup., 235 S. W. (2d) 262; and Severs v. Williamson, Mo. App., 198 S. W. 2d 368. Appellant asks that the judgment and decree be set aside and the cause remanded with the direction that the trial court dispose of all issues.

It is manifest from the record that the trial court tried, considered and rendered judgment only upon the issues raised by pleadings relating to the trustee's deed, and set aside such deed and applied the proceeds of the sale of wheat as we have stated supra. In its judgment the trial court ordered "that damages and accounting having been abandoned in the cause by the respective parties, this judgment shall be no prejudice to the parties on those issues." The items on which defendant sought recovery by counterclaim were those that the trial court might have taken into account in an accounting to the end of making a finding adjusting the money claims of the respective parties, and the judgment is construed by us as a disposal by "dismissal without prejudice" as to the claims for damages, accounting and counterclaim. The trial court was justified in considering the issues of damages, accounting and counterclaim had been withdrawn or voluntarily dismissed, since defendant-appellant, who had prayed for an accounting, interposed an objection to plaintiffs' attempt to develop proof upon the issues whereby the obligations of

the parties might have been determined, set off and adjusted and a single money judgment rendered.

The judgment should be affirmed.

It is so ordered.  *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.  All of the judges concur.