**J. A. COLLIER and Nona Collier, Plaintiffs-Respondents,**

v.

**L. Q. SMITH and Sally J. Smith, Defendants-Appellants.**

No. 7468.

Springfield Court of Appeals.

Missouri.

July 23, 1956.

Little & Enfield, Bentonville, Ark., for defendants-appellants.

Gordon R. Boyer, Lamar, for plaintiffs-respondents.

STONE, Judge.

In this court-tried case, defendants appeal from an adverse judgment of $6,713.90, declared to be a lien against certain real estate owned by them in Barton County, Missouri. The record reflects an involved state of facts which we detail only insofar as is necessary for determination of our appellate jurisdiction.

On December 31, 1952, defendants entered into a "contract and escrow agreement" (hereinafter called the escrow agreement) with Mrs. Bertha Crider, by which the parties agreed "to trade equities" in certain tourist courts. Pursuant to this escrow agreement, defendants executed a deed to the Centennial Courts at Gainesville, Texas (subject to two liens), which was deposited with the First State Bank of Gainesville, as escrow agent, and was not to be delivered to Mrs. Crider until she "pays off the second lien in the approximate sum of $10,500 on the Alma Plaza Courts of Alma, Arkansas." Having taken title to the Alma Plaza Courts (also subject to two liens), defendants thereafter, to-wit, on May 6, 1953, entered into a "real estate contract" with plaintiffs, by the terms of which plaintiffs traded a 160 acre farm in Barton County, Missouri (subject to two deeds of trust), and a 155 acre farm on Bull Shoals Lake (free of liens) to defendants in exchange for the Alma Plaza Courts, with plaintiffs "taking over" the escrow agreement; and, on May 9, 1953, defendants executed a written "assignment" to plaintiffs of "all our (defendants') right, title and interest" in and to the escrow agreement.

While plaintiffs were taking possession of the Alma Plaza Courts on May 26, 1953, a representative of Mrs. Crider called over long distance from Texas and talked with both plaintiffs and defendants concerning satisfaction of the second mortgage on the Alma Plaza Courts and release to Mrs. Crider of the deed to the Centennial Courts, still being held by the escrow agent at Gainesville, Texas. What was said in this telephone conversation is not clear, and what plaintiffs thereafter told defendants is in sharp dispute. According to defendants, plaintiffs told them (defendants) "to go to Texas and release that escrow"; and, when defendants asked "for written authority to release those papers down there," plaintiffs said "it wasn't necessary." On the other hand, plaintiffs insisted that, although they were willing for the deed to the Centennial Courts to be delivered by the escrow agent to Mrs. Crider when (as the escrow agreement provided) she "pays off the second lien" on the Alma Plaza Courts, defendants were not authorized to release the deed to Mrs. Crider unless and until she paid such "second lien" in full. In any event, defendants immediately started for Texas and, on the following day, signed a written authorization to the First State Bank of Gainesville, the escrow agent, "to release (the) escrow agreement" and deliver "all papers to Mrs. Crider," upon which the escrow agent, *not having been notified of defendants' "assignment" of the escrow agreement to plaintiffs,* delivered to Mrs. Crider the deed to the Centennial Courts. Defendants' explanation was that they had signed the authorization to the escrow agent in the office of a realtor representing Mrs. Crider, then "on a trade * * * to sell the Centennial Courts," in reliance upon Mrs. Crider's promise that, although she did not have "the money in hand that evening," she would pay the "second lien" on the Alma Plaza Courts in full the following morning. However, Mrs. Crider paid only $5,000 on this "second lien," leaving an unpaid balance thereon which, with interest, amounted to $6,713.90 at the time of trial.

By warranty deed executed on September 26, 1953, but not delivered until November 2, 1953, plaintiffs conveyed the Alma Plaza Courts to J. J. McBride and Estella McBride. Plaintiffs said that the McBrides were "accepting the escrow agreement * * * just as we accepted it"; but, when plaintiffs and the McBrides heard on September 26, 1953 (all of them for the first time, as plaintiffs testified), that "the escrow agreement had been released," the McBrides refused to take an "assignment" of the escrow agreement so, as subsequently embodied in an instrument dated September 29, 1954, plaintiffs agreed to "stand good for any second mortgage on the Alma Plaza Courts."

Plaintiffs sought and obtained judgment on the theory, as stated in their "petition for damages and equity," that "due to the

wrongful and fraudulent acts of the defendants, they (plaintiffs) have become liable to the McBrides under the covenants of warranty in their deed," which made no reference to either of the liens on the Alma Plaza Courts, although the McBrides then had actual knowledge of both liens. Although the note secured by the second mortgage on the Alma Plaza Courts matured on April 25, 1953, the transcript on appeal reflects no payment on the note by either the McBrides or plaintiffs, no demand for payment upon any of them, no attempt to foreclose the second mortgage, and in short no loss actually incurred by the McBrides or plaintiffs excepting only expenses incident to plaintiffs' unsuccessful efforts to induce payment, by Mrs. Crider or defendants, of the balance on the note secured by the second mortgage. Thus, the record before us suggests legal questions of substance which, however, we do not reach or rule because, as hereinafter explained, we are without appellate jurisdiction to review the case at this time.

Defendants not only answered plaintiffs' petition but also filed a counterclaim in which they sought a money judgment of $321.97 for rentals on the farms conveyed to them by plaintiffs in May, 1953, which said rentals (as was alleged) "were the property of these defendants" but were "wrongfully obtained" by plaintiffs. In their reply, plaintiffs admitted having received rentals of "$351.71 rather than $321.-97" but, "as a setoff thereto," asserted that they "were obligated to pay" insurance premiums, taxes, and bills for lime and fertilizer in an aggregate amount in excess of such rentals collected. There was no order for a separate trial of defendants' counterclaim [Section 510.180, subd. 2 RSMo 1949, V.A.M.S.—contrast Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.2d 596, 597(4); Harper v. St. Joseph Lead Co., Mo., 233 S.W. 2d 835, 836], and the court's findings and judgment made no mention of the counterclaim.

■■ Since the right of appeal is purely statutory,[1] defendants' right (if so) to maintain the instant appeal depends upon that provision of Section 512.020 which permits an appeal "from any final judgment in the case"; and, although we collect only a few of them marginally, the cases are legion in which it has been pointed out that ordinarily a judgment (defined by Section 511.020 RSMo 1949, V.A.M.S., as "the final determination of the right of the parties in the action"), to be final and appealable, must dispose of all parties and of all issues in the cause and must leave nothing for future determination.[2] "This means a disposition of all issues raised by all pleadings" [State ex rel. State Highway Commission v. Hammel, Mo., 290 S.W.2d 113, 117], so a judgment on the cause of action alleged in a petition, which does not dispose of a counterclaim, is not final and appealable.[3]

1. Weir v. Brune, 364 Mo. 415, 262 S.W. 2d 597, 599(4); Tucker v. Miller, 363 Mo. 820, 253 S.W.2d 821, 823(1); Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 695(1), 34 A.L.R. 2d 972; Hahn v. Hahn, Mo.App., 287 S.W.2d 337, 341(3); Dugan v. Trout, Mo. App., 271 S.W.2d 593, 595(1).

2. State ex rel. State Highway Commission v. Hammel, Mo., 290 S.W.2d 113, 116 (3); Lawrence County on Behalf of Tunnell v. Johnson, Mo., 269 S.W.2d 110, 111; State ex rel. Thompson v. Terte, 357 Mo. 229, 207 S.W.2d 487, 489(2); State v. Couch, Mo.App., 285 S.W.2d 42, 45(5); Hance v. St. Louis-San Francisco Ry. Co., Mo.App., 283 S.W.2d 879, 880–881(4); Huber v. Solon Gershman Realtors, Inc., Mo.App., 263 S.W.2d 858, 859(1); Ladue Contracting Co. v. Land Development Co., Mo.App., 262 S.W.2d 360, 361(2); Kidd v. Katz Drug Co., Mo. App., 244 S.W.2d 605, 606(2); Green v. Green, Mo.App., 240 S.W.2d 741, 742(3); Graham v. Bottorff, Mo.App., 240 S.W.2d 191, 193(5).

3. Bennett v. Wood, Mo., 239 S.W.2d 325; Deeds v. Foster, Mo., 235 S.W.2d 262, 265–266(4, 5); White v. Sievers, 359 Mo. 145, 221 S.W.2d 118, 123(17); McNabb v. Payne, Mo.App., 280 S.W.2d 864; Ash Grove School Dist. R–4 v. Callison, Mo.App., 252 S.W.2d 96, 97(2); Shoush v. Truitt, Mo.App., 235 S.W.2d 859; Severs v. Williamson, Mo.App., 198 S.W.2d 368, 370(1).

We recognize, as defendants here emphasize, that the failure of a judgment to make *specific* disposition of a counterclaim is not, in all instances and under all circumstances, fatal to maintenance of an appeal. But, this suit is not closely analogous to, and may not be fairly classified with, jury-tried cases in which both parties could not win and a jury verdict for one necessarily constituted a finding against the other,[4] nor jury-tried cases in which the issues raised by the petition and by the counterclaim have been tried and the verdict actually has disposed of all such issues, although the judgment has not expressly done so,[5] nor court-tried cases in which adjudication of the claim stated in one count of plaintiff's petition has rendered unnecessary consideration of the claim for alternative relief stated in another count [Meyer v. Meyer, Mo., 285 S.W.2d 694, 699 (5)], in all of which cases the judgments have been regarded as final and appealable because, in fact, they *"effectively disposed of"* all issues properly raised by the pleadings. Commercial Nat. Bank of Kansas City, Kan. v. White, Mo., 254 S.W.2d 605, 609(5); Villmer v. Household Plastics Co., Mo., 250 S.W.2d 964, 970–971. However, it is obvious in the instant case that determination of plaintiffs' claim for damages resulting from the alleged "wrongful and fraudulent acts" of defendants in inducing the escrow agent to release to Mrs. Crider the deed to the Centennial Courts in Gainesville, Texas, neither necessarily nor effectively disposed of defendants' counterclaim for farm rentals alleged to have "belonged to" defendants but to have been "wrongfully obtained" by plaintiffs.

The judgment in the case at bar is not susceptible of being construed as showing dismissal or abandonment of the counterclaim [contrast Starr v. Mitchell, Mo., 237 S.W.2d 123, 128(11, 12)]; and, although defendants may appear to have abandoned it, such abandonment is neither clearly demonstrated by, nor fairly inferable from, the transcript on appeal which we must take as it comes to us.[6] Rather, defendants' "pleadings stated a claim upon which relief could be granted and the issues raised required some disposition by the trial court." Deeds v. Foster, Mo., 235 S.W.2d 262, 264. See also Ash Grove School Dist. R–4 v. Callison, Mo.App., 252 S.W.2d 96, and Severs v. Williamson, Mo.App., 198 S.W.2d 368.

Characterizing plaintiffs' motion to dismiss the appeal "as a Johnny-come-lately," defendants further contend that, although "the judgment of the trial court erroneously failed to dispose of the counterclaim," plaintiffs "waived such error by filing their brief" in this court. But, unless there is a final and appealable judgment, we have no appellate jurisdiction to review;[7] and, it is settled, beyond room for argument or doubt, that appellate jurisdiction may not be conferred by waiver, ac-

4. Commercial Nat. Bank of Kansas City, Kan. v. White, Mo., 254 S.W.2d 605, 608; Staples v. Dent, Mo.App., 220 S. W.2d 791, 792(2); Ragsdale v. Young, Mo.App., 215 S.W.2d 514, 516–517(2); Dement v. McNail, Mo.App., 4 S.W.2d 831, 833(10); Cosgrove v. Stange, 194 Mo.App. 14, 183 S.W. 691; Plymouth Cordage Co. v. Yeargain, 87 Mo.App. 561, 565. In the Staples case, supra, the St. Louis Court of Appeals classified with these cases its prior decision in City of St. Louis ex rel. and to Use of Sears v. Clark, Mo.App., 35 S.W.2d 986, on which defendants here rely.

5. Commercial Nat. Bank of Kansas City, Kan. v. White, supra, 254 S.W.2d loc.

cit. 609(5); Villmer v. Household Plastics Co., Mo., 250 S.W.2d 964, 970–971 (6); Memphis Bank & Trust Co. v. West, Mo.App., 260 S.W.2d 866, 878(15).

6. State ex rel. State Highway Commission v. Hammel, supra, 290 S.W.2d loc. cit. 118(14); Bennett v. Wood, supra, 239 S.W.2d loc. cit. 327(2); McNabb v. Payne, supra, 280 S.W.2d 866(6); Stewart v. Stewart, Mo.App., 277 S.W.2d 322, 325.

7. Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657, 659(2); Farmers Mut. Hail Ins. Co. v. Garnand, Mo.App., 238 S.W.2d 437, 438(2); Edwards v. Sittner, Mo.App., 206 S.W.2d 578, 580(2).

quiescence or even express consent.[8] Thus, the date of filing of plaintiffs' motion to dismiss the appeal becomes wholly unimportant, for we are obliged to determine, *sua sponte,* whether we have appellate jurisdiction.[9]

Finding, as we have, that no final and appealable judgment was entered in the instant case, it follows that defendants' appeal was premature, that plaintiffs' motion to dismiss the appeal should be sustained, and that the appeal must be dismissed. It is so ordered.

McDOWELL, P. J., and RUARK, J., concur.

8. Mack v. Mack, Mo., 281 S.W.2d 872, 873 (1); Ewing v. Kansas City, 350 Mo. 1071, 169 S.W.2d 897, 900(3); Higgins v. Smith, 346 Mo. 1044, 144 S.W.2d 149, 151(4); Drew v. Platt, 329 Mo. 442, 44 S.W.2d 623, 624; State v. Egan, Mo.App., 272 S.W.2d 719, 722(2).

9. Hammonds v. Hammonds, 364 Mo. 517, 263 S.W.2d 348, 350(4), and cases there cited; State v. Couch, supra, 285 S.W.2d loc. cit. 45(3); Hance v. St. Louis-San Francisco Ry. Co., supra, 283 S.W.2d loc. cit. 880(2); McNabb v. Payne, supra, 280 S.W.2d loc. cit. 866–867(8). See also the numerous cases collated in West's Missouri Digest, Vol. 2, Appeal & Error,