Earnie HANCE, Employee, Appellant,

v.

JOHNSON, STEPHENS & SHINKLE SHOE COMPANY, Employer, and Liberty Mutual Insurance Company, Insurer, Respondents.

No. 7642.

Springfield Court of Appeals.

Missouri.

Oct. 23, 1957.

White & White, Rolla, for appellant.

James E. Garstang, C. Lawrence Mueller, St. Louis, for respondents.

STONE, Judge.

In this proceeding for benefits under the Missouri Workmen's Compensation Law [Chapter 287], Earnie Hance, self-described as a "very goosy" individual, asserted that, while drinking at a fountain in the Rolla plant of Johnson, Stephens & Shinkle Shoe Company, his employer, "I was goosed and I jumped against the drinking fountain." (All statutory references herein are to RSMo 1949, V.A.M.S.) The referee in the first instance, and the Industrial Commission of Missouri on review, denied benefits because (in the language of the Commission) "the employee's condition was not caused nor aggravated by the accident but was the result of Peyronie's Disease that existed prior to the date of the accident." Following affirmance by the circuit court, the employee seeks appellate review.

Our initial duty is to inquire into and determine our appellate jurisdiction. Taney County v. Addington, Mo.App., 296 S.W.2d 129(1), and cases there cited. The employee filed a timely motion for new trial on the fourth day after entry of judgment in the circuit court. Section 510.340. When that motion was overruled on March 20, 1957, less than ninety days after it had been filed, the judgment became final for the purpose of ascertaining the time within which an appeal might be taken. Supreme Court Rule 3.24(a); Starr v. Mitchell, Mo., 237 S.W.2d 123, 124(1). Fifteen days thereafter, to-wit, on April 4, 1957, the employee filed his notice of appeal.

The plain and unequivocal mandate of Section 512.050 is that no appeal "shall be effective unless the notice of appeal shall be filed not later than ten days after the judgment or order appealed from becomes final." The right of appeal is purely statutory [Collier v. Smith, Mo. App., 292 S.W.2d 627, 629(1), and cases there collected]; and, although courts have discretionary power to extend the time for the doing of many acts, they may not enlarge the period within which an appeal may be taken. Section 506.060; Kattering v. Franz, 360 Mo. 854, 856, 231 S.W.2d 148, 149; Bank of Thayer v. Kuebler, 240 Mo. App. 776, 781, 219 S.W.2d 297, 299. It has been pointed out repeatedly that the timely filing of a notice of appeal is the vital step for perfecting an appeal and is an essential prerequisite to appellate jurisdiction. Starr v. Mitchell, supra, 237 S.W. 2d loc.cit. 124–125(3); Byers v. Zuspann, Mo.App., 257 S.W.2d 384, 387(1); Hynes v. Risch, Mo.App., 243 S.W.2d 116, 117(2). See, also, Weller v. Hayes Truck Lines, 355 Mo. 695, 197 S.W.2d 657, 660(4); Woods v. Cantrell, 356 Mo. 194, 201 S.W.2d 311, 314–315(2). Where, as in the instant case, the notice of appeal has not been filed within the permitted time, we have no alternative other than to dismiss the appeal, no matter how strong may be our disposition and desire to accord a liberal construction to statutes and rules pertaining to appellate procedure. State v. Robbins, Mo., 269 S.W.2d 27, 29; Perr v. Perr, Mo.App., 227 S.W.2d 490, 492(3); Krummel v. Hintz, Mo.App., 222 S.W.2d 574, 576(3).

However, we have, ex gratia, examined the transcript carefully that our disposition of this appeal may, in no event, contribute to the frustration sometimes engendered by the condition known as Peyronie's Disease, with which the employee admittedly is suffering. Peyronie's Disease, "a headache to all of the urologists" (as one medical witness volunteered) and obviously more than that to patients afflicted therewith, is a condition curtly referred to as "plastic induration of the penis" and more graphically described as the replacement of normal vascular tissue with fibrous tissue causing "a plaque or a hardened area to form" and resulting in a painful curvature of the penis during erection. One of the employee's medical witnesses found "an indurated mass (i.e., hardened area) about two to three centimeters * * long on the *left* side" *near the base* of the employee's penis, another of the employee's medical witnesses thought that the hardened area was "on the *mid-portion* of the penis," a third medical witness for the employee just as confidently asserted that the induration was on "the *right* side of the penis," and the employer's-insurer's medical examiner found "several patches"—"some toward the base and then it goes up toward the front end of the penis"—involving the top and both sides. The employee, no doubt as well qualified as any of the "experts" to describe the objective manifestations of his malady, reported in vivid and picturesque style that, "when it would come into an attention," his penis "would be in a hay hook position"—"it curved over toward the left side."

Although Peyronie's Disease seems to be a stranger to the law, our medical brethren are well acquainted (professionally) with this bizarre condition, as indicated by the employee's urologist who had examined "quite a few" similar cases—"a lot of them" —and the employer's-insurer's urologist who sees "probably from ten to fifteen cases a year." A medical doctor at Rolla, called as a witness for the employee, surmised that, since "the best authorities say the trauma of repeated erections may even cause it (Peyronie's Disease), I would assume that any trauma might possibly be a factor in it"; and, an osteopath at Waynesville listed "trauma or injury to the organ" among several suspected causes of this condition. However, employee's counsel signally and significantly failed to elicit even a concession of this character from his urological expert in St. Louis, and all of the medical witnesses agreed with refreshing unanimity that the cause of Pey-

ronie's Disease is still unknown. On behalf of the employer and insurer, another urologist in St. Louis, eminently qualified in his specialty, testified positively that "this disease is a slow-growing disease, it does not come rapidly, it takes time to develop," adhered persistently to the opinion that the onset of Peyronie's Disease in the employee dated from "probably a year or two previous to the alleged injury," and stated definitely that in his judgment there "is no relation whatsoever" between the incident at the water cooler and the employee's condition. We note parenthetically that the employee's doctor at Rolla said that the "probably a dozen" cases of Peyronie's Disease observed by him had "an insidious onset."

If permitted to review this case on its merits, we would be authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made its findings and award, but this would not mean that we could substitute our own judgment on the evidence for that of the Commission. On the contrary, we could set aside its findings and award only if they were clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, was viewed in the light most favorable to such findings and award. Hall v. Spot Martin, Mo., 304 S.W.2d 844, 847–848(2, 3); Davis v. McKinney, Mo. App., 303 S.W.2d 189, 190(1); Garrison v. Campbell "66" Express, Mo.App., 297 S.W. 2d 22, 30(8), and cases there cited. With appropriate recognition of these basic principles and the further fact that the burden of proof rested upon the employee to prove injury resulting from the alleged accident [Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 12(2)], it is clear to us that disposition of this appeal on its merits would have resulted in affirmance of the judgment.

It may not be amiss to add, before closing this judicial chapter, that the employee's plight is not so dire, doleful and distressing as might appear, at first blush, to the casual reader. After the incident at the water cooler more than seven weeks passed before the employee about April 20, 1955, first consulted a physician and made formal complaint to his employer concerning the alleged accident and injury; and, at the hearing before the referee on November 29, 1955, the employee readily agreed that he had worked steadily at the same employment without loss of time due to his penile condition. When asked to describe any disability resulting to the employee from Peyronie's Disease, his most cooperative medical witness said that "disability * * * is going to refer to his sexual life, and it is apt to be completely disabling in that respect"; and, although we certainly would not minimize or lightly dismiss that unpleasant prospect, perhaps its initial impact upon the employee, who appears to be in his fifties, may be softened by the sage philosophical observation of one of the urological specialists that, although "it will interfere with him having intercourse and that causes a certain amount of frustration, it won't shorten his life any" and "as you get older * if you are not interested in intercourse, it won't make a particle of difference."

The employee's appeal must be and is dismissed.

McDOWELL, P. J., and RUARK, J., concur.