M_____ C. A_____, Plaintiff-Appellant,

v.

G_____ H. A_____, Defendant-Respondent.

No. KCD 26105.

Missouri Court of Appeals,
Kansas City District.

April 2, 1973.

P. Pierre Dominique, Jefferson City, for appellant.

John Kibbe, California, for respondent.

Before SWOFFORD, P. J., and SHANGLER and WASSERSTROM, JJ.

SWOFFORD, Judge.

This appeal involves an action for divorce and custody of four minor children. The court below awarded a decree of divorce to the husband-defendant on his cross-petition and also awarded him custody of the three male children of the parties, now aged 18, 15 and 8 years. The plaintiff-wife was awarded the custody of the female child of the parties, now 13 years of age, and $35.00 per month child support. Each parent was given reasonable visitation rights. The decree was en-

tered October 28, 1971 and on November 12, 1971, the plaintiff filed a motion for a new trial, Rule 73.01(c), V.A.M.R. No action was taken in the court below on the motion, and on February 11, 1972, the plaintiff filed her notice of appeal to this court, wherein she stated that she appealed "from the Motion for New Trial filed by plaintiff on November 12, 1971, which was deemed to be denied since the Court did not pass on said Motion within ninety days after the filing of same."

■ Of course, this notice of appeal is completely ineffectual to bring anything before this court. The denial of a motion for a new trial is not an appealable judgment. Section 512.020 RSMo 1969, V.A.M.S.; Woods v. Cantrell, 356 Mo. 194, 201 S.W.2d 311 (1947); Walker v. Thompson, 338 S.W.2d 114 (Mo.1960).[1] Where a motion for a new trial or to modify a judgment is overruled, the appeal should be from the judgment. This is Hornbook law and this court would be justified in dismissing this appeal on its own motion, were it not for the fact that the welfare and status of children is here involved. It is upon this basis alone that we exercise our discretion to consider that the appeal was from the judgment and decree of October 28, 1971, and accept the responsibility to review this case. Standley v. Western Auto Supply Company, 319 S.W.2d 924 (Mo.App.1959); Clark v. Dubbs, 360 S.W.2d 288 (Mo.App.1962).

We have not been favored by a brief from respondent and the case was submitted to us without oral argument by either party. The transcript of testimony, particularly with regard to the problem of child custody, lacks much evidence which would be helpful to us in determining the issues before us. The crowded condition of appellate dockets and professional considerations should entitle the court to more assistance and consideration from counsel.

■ Appellant asserts two grounds upon which she asks reversal of the judgment. *First*, she claims that the evidence failed to establish that the defendant was the innocent and injured party entitled to the decree, and that she on the other hand, was the innocent and injured party and should have been granted the divorce. *Second*, she claims that the trial court erred in granting the custody of one of the children, R—— S. A.——, to the defendant.

■ The record before us discloses that there is direct conflict in the testimony of the parties as to almost every vital issue in the case. It is our duty to review all of the evidence de novo and reach our own conclusion as to the proper judgment to be entered. However, where such irreconcilable conflict in the testimony exists, we must give great deference to the findings of the trial judge who saw and heard the parties on the witness stand, and thus, was in a much better position to judge their credibility. Markham v. Markham, 429 S.W.2d 320, 323 (Mo.App.1968); Boyd v. Boyd, 459 S.W.2d 8, 11 (Mo.App.1970); McGehee v. McGehee, 448 S.W.2d 300, 303 (Mo.App.1969); Struttmann v. Struttmann, 463 S.W.2d 600, 602 (Mo.App.1971).

At the time of the trial, the plaintiff-wife was 41 years of age and the defendant-husband was 60 years of age. They had four children, 3 sons and a daughter, whose present ages are above noted.

At the time this divorce action was filed in April, 1970, this family lived together in a house in California, Missouri, and on May 21, 1970, the plaintiff-wife left the defendant, taking all the children with her, and moved into an apartment. The plaintiff was employed at a plant in Jefferson City, Missouri and at the time of trial the defendant was employed as a welder. Their take-home pay was in about the same wage bracket.

1. The notice of appeal herein was filed under former Rule 82.08, which is now Rule 81.08 (effective September 1, 1972). The mandatory requirements as to the content of Notice of Appeal under the present rule must be more detailed and specific than under the old rule. These requirements must be strictly followed.

The plaintiff stated that her problems with the defendant had occurred over the past two years, following the defendant's release from a hospitalization in July, 1969, after a bout with pneumonia, which, she claimed, resulted in his sexual impotence. This in turn resulted in his becoming highly irrational; crying; drinking too much; making accusations against her with reference to improper relations with other men, including a Mr. H.; arguing over the children; and calling her names. This situation continued, she testified, until she left home. She denied any improper relations with Mr. H. or anyone else, and stated she had never failed to perform (or attempt to perform) her marital duties.

The husband-defendant testified that after he came home from the hospital, his wife told him that in order to retain her job, she had to go to the "camp" with this man and "stay" with him one or two nights a month; she would go out with him, go swimming with him, and admitted intercourse with him; that she would call him from the home and he would come by and pick her up despite defendant's protest; that her admissions and his claims of improper relations applied to only one man, Mr. H., who drove her back and forth to work, for which she did not pay; and that he took his wife out of this man's car one night in the town of California.

The plaintiff-wife upon re-examination admitted spending the night at a lake with Mr. H. without anyone else present and made the somewhat startling and unique explanation—"I went with him, with this other man, so I could get some sleep."

A witness for the plaintiff, a lady who was a rider to and from Jefferson City with the plaintiff—and Mr. H., testified that Mr. H. was a resident of California, Missouri and that she had ridden regularly with them for two years and had never observed any improper conduct. She stated Mr. H. was a widower. She related an incident at the Steakhouse where she, her husband, the plaintiff and Mr. H. had gone for dinner, where the defendant had appeared and caused a scene.

We hold that upon the basis of the testimony here summarized, the defendant offered ample competent evidence to establish that he was the innocent and injured party and that the court below properly granted him a decree of divorce upon his cross-claim and that judgment is affirmed.

If any doubts lingered as to the plaintiff's claim (asserted in her brief before us) that she was vigorously asserting the rights of an innocent and injured spouse in her quest for a divorce decree, because of the defendant's conduct and treatment of her, such were put to rest by her statement:

"My *only reason* for filing for divorce was to maintain custody of the children, *that was the only reason.*"

She apparently wisely concluded that to attain this aim—a good offense was the best defense.

This brings us to the matter of the custody of the children of the marriage. Both plaintiff-wife and defendant-husband sought custody of all four children. The court below awarded custody of the three boys to the father and the girl to the mother. The mother seeks relief and our judgment in this regard *only* as to the youngest son, now 8 years of age, and asks that she be awarded custody of this child in addition to the daughter. In this paramount area of concern, the chancery powers of the court below and of this court cannot be thus restricted by the whim of a party-parent—who says in effect—"I'll take this one—you take that one, etc." To the great credit of the bench and bar, we insist that these matters be resolved, so far as may be, in the interests of the child and with the child's welfare always the prime and overwhelming consideration.

We approach this problem (as did the court below) with a paucity of evidence as to the actual care given and the condition of the children during those periods when

they were with one parent or the other or the respective capabilities of each to care for them in the future.

■ The *prime basis* asserted by the plaintiff-mother for her request that custody of the younger son be awarded to her, is that the father lives in a house which has no inside toilet or water, while her apartment is equipped with such facilities. Further, she does not seem to consider this lack so shocking when suffered by her older sons. She testified:

"Q. O.K.—Now, Mrs. A———, as the situation now stands, you stated that you had, you have the two children?

A. Yes.

Q. And tell the Court what is your intentions in this regard. Do you want to keep it this way and have the two and let your husband have the other two or what?

A. I would like full custody of the two younger children. I would like to have all four of them, the two oldest ones.

Q. I didn't understand you, ma'am.

A. I would like the full custody of the two younger ones or all four of them. The two oldest ones state they wished to stay with their father. Considering their age I was willing to go along with them.

Q. You have no objection if the two oldest boys stay with their father if he cares for them?

A. No."

While we would be the last to deprecate the value of modern plumbing, we cannot rule this case (or any other) upon that issue standing alone. Modest means, lack of modern facilities, or a humble home—do not necessarily create a bad environment for a child. Such primitive conditions are not desirable, but when the basic necessi-

ties of life are available, even though in modest and frugal amounts, character can be built, welfare and happiness assured, and the interest of the child promoted by other than such material things. The love of parents and respect for them is not the least of these.

Here, the mother expresses her social position with Mr. H. as it has affected the children:

"Q. You didn't go anywhere else with him?

A. I went fishing with him once and I and the three boys and Mr. H. went to a picnic that they had once a year. And upon one other occasion Mr. H. called me and begged to take me out.

Q. Do you think this is a good influence on your children?

A. It at the time *he had it pretty much in his own favor* but later all four changed their minds. The two youngest ones stayed that way and the *two older ones leaned over to their father*." (Emphasis added)

It is obvious that there was some sort of influence at work to alienate the children from their father in favor of Mr. H. which, at one time at least, was rewarded by some measure of success.

In this area also we must indulge the presumption that the court below considered all the evidence and that it was motivated by what it believed was best for the children. Here again, it was in better position to evaluate the sincerity of the parties and the other intangibles which do not appear on the record. Graham v. Graham, 428 S.W.2d 941, 944 (Mo.App.1968); Wagner v. Wagner, 465 S.W.2d 655, 659 (Mo.App.1971).

Our only doubt as to the propriety of the order with reference to custody of the children is whether the mother should have been awarded the custody of the daughter.

Upon the basis of the record before us, we will, however, affirm the custody award. The court below will, of course, assume and be charged with a continuing responsibility with reference to the future care and custody of these younger children arising from any change in circumstances.

The judgment is, therefore, affirmed.

All concur.