## AMERICAN BREWING COMPANY, Appellant, v. CITY OF ST. LOUIS.

### Division One, February 26, 1908.

1. **PAYMENTS: Voluntary: Water: License.** The city ordinance fixed the ordinance rate for water obtained from the city works, when the water used for purely manufacturing purposes exceeded twenty-five thousand gallons per day, at one and one-fourth cents per hundred gallons, and at one cent per hundred gallons when the amount consumed annually exceeded fifty million gallons; and in order to obtain water from the city, plaintiff was required to take out a license for which it had to pay in advance for the estimated quantity likely to be used for the ensuing period of six months, and if at the end of a six-months' period a reading of the meter showed that the quantity used was either more or less than the estimate, the difference was to be adjusted and the account balanced. The plaintiff took out three licenses, each for a period of six months, the three covering a period of eighteen months, and paid for the same at the rate of one and one-fourth cents per hundred gallons, but at the end of the time the meter readings showed it had used more than fifty millions gallons annually, and it sues for a return by the city to it of one-fourth of one cent for each hundred gallons used. The evidence showed that at the time the licenses were taken out the quantity likely to be used was a mere estimate, that neither the plaintiff nor the assessor of water rates could know certainly what it would be, and that the licenses were issued with the understanding that the differences between the estimates and the actual consumption as shown by the meters were to be adjusted at the end of each six months' period. *Held,* that the plaintiff was not precluded from recovering on the theory that the payments were voluntary.

2. **WATER: Manufacturing Purposes: Burden of Proof.** The burden was not on the city, when sued for excessive payment for water furnished at the rate of one cent per hundred gallons when the amount annually used for purely manufacturing

purposes exceeded fifty million dollars, to show that a part of the water was used for a saloon or that the amount used for any purpose other than purely manufacturing purposes was sufficient to reduce the amount consumed to less than fifty million gallons.    The burden was on the manufacturing company to show that the water it used was for purely manufacturing purposes.

3.  ————: ————: Finding of Trier of Fact.   In an action at law the finding of the trier of the facts will not on appeal be disturbed if there is any substantial foundation for it in the evidence.    And whether or not the water used by plaintiff was used for purely manufacturing purposes is such an issue. And the rule is to be observed when the finding was against plaintiff on whom was the burden of proof, because of a failure to make such proof, as it is where the finding is in his favor, because he did make proof to support it.

4.  ————: ————: What is: In Making Beer.   It is not necessary, where the issue is whether or not the water used in the manufacture of beer was used "for purely manufacturing purposes," for the company to show that the water went solely into the composition of beer; it was used for such purpose if it was used or consumed in the  business of  making  beer, whether in the composition of the beer itself, or for cooling and ice machines, etc.

5.  ————: ————: ————: ————: Reversal  Because  of Wrong Theory.   And where the issue was whether the water used was used "for purely manufacturing purposes," and the trial court found it was not so used, but the evidence on that point is very meager, and the questions asked indicated that the defendant tried that issue on the theory that the water was not used "for purely manufacturing purposes" unless it was used solely in the composition of beer, and no instructions were given or asked, the judgment will be reversed and the cause remanded, in order that complete justice may be done, although the rule is that the finding by the trier of the fact is binding on this court on appeal; for, if the court tried the case on that theory, an error of law influenced its finding.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas*, Judge.

REVERSED AND REMANDED.

*Harlan, Jeffries & Wagner* for appellant.

(1)  Appellant is entitled to the rate of one cent per hundred gallons under the ordinance.  (*a*)  It is

affirmatively shown by the evidence that, during the period in controversy, (1), appellant consumed over fifty million gallons of water annually from respondent's water works; (2), appellant used the same at its manufacturing plant, located wholly in one city block; and (3), appellant used all of the same for purely manufacturing purposes. (b) The affirmative and uncontradicted evidence that all the water was used for purely manufacturing purposes is strengthened by the presumption that respondent's officers in authority, the assessor and collector of water rates and his deputies, did their duty under the ordinance, and that in giving the appellant the one and one-fourth cent rate for purely manufacturing purposes, during the period in controversy, they must have found that the water was being used for such purposes. Municipal Code, St. Louis, 1901, ch. 38, secs. 2318, 2319, 2320a, 2321, 2323, 2325, 2338, 2343, 2345, 2348, 2349, 2350, 2352, 2353, 2354; Hammond v. Gordon, 93 Mo. 223; Adams v. Cowley, 95 Mo. 501; State ex rel. v. Bank of Neosho, 120 Mo. 161; McShane v. School District, 70 Mo. App. 624. (c) Respondent's officers again found the fact that the water had been so used for purely manufacturing purposes, by their correction of appellant's rate to one cent per hundred gallons, after discovery of the overcharge. (d) Appellant is entitled to the benefit of the further presumption that it, and its officers and employes, as well as respondent's officers, obeyed the law and complied with the ordinance prohibiting the use of water through respondent's meters by unauthorized persons, or for unauthorized uses, and prescribing penalties and forfeitures therefor. Municipal Code St. Louis, 1901, ch. 38, secs. 2343, 2344, 2345, 2349, 2350, 2352, 2353, 2364; St. Louis v. Arnot, 94 Mo. 275; State ex rel. v. Bank of Neosho, 120 Mo. 161. (e) Even if the evidence disclosed, which it does not, that any part of the water had been used for other than purely

manufacturing purposes, unless the evidence also showed, which it does not, that such an amount was so used as to reduce the amount used for purely manufacturing purposes by appellant to less than fifty million gallons annually during the period in controversy, such proof would only go to reduce, *pro rata,* the amount of the overcharge and appellant's consequent damage, and would not defeat its cause of action. (2) The overpayment was made by appellant under compulsion or duress. Westlake & Button v. St. Louis, 77 Mo. 47; St. Louis Brewing Association v. St. Louis, 140 Mo. 428; American Brewing Company v. St. Louis, 187 Mo. 367.

*Charles W. Bates* and *Charles P. Williams* for respondent.

(1) This court cannot, on the evidence, find, as a matter of fact, that the water was used for purely manufacturing purposes, and withdraw the money from its designated special application. Charter of St. Louis, art. 7, sec. 11. (2) Mr. Koehler's testimony as to general matters is necessarily qualified by the reference to special matters. (3) There need be no presumption of plaintiff's violation of the ordinances. Plaintiff had the right to use one and one-fourth cent water for general purposes. (4) The action of the former assessor of water rates with respect to former distinct periods, is presumed to have been correct as applied to the matters coming under his jurisdiction, and forming, as to him, distinct and separate *res gestae.* (5) The correctness of this former official's action is not impeached, by showing that the action of a successor, with respect to new and distinct periods, constituting distinct and new *res gestae,* was different. (6) Plaintiff is seeking to show that it belonged to a special class, with a special rate. It cannot belong to two classes at the same time. (7) The facts shown do not constitute duress or compulsion. The fundamental

basis of duress is fear. It must appear that the *vis compulsiva* overcame the will of the person affected, causing him to do something he would not otherwise have done. 2 Greenleaf on Evidence, sec. 301; James v. Dalbey, 107 Iowa 468; Dunham v. Griswold, 100 N. Y. 226; Flanagan v. Minneapolis, 36 Minn. 406; Brown v. Pierce, 7 Wall. 214; Galusha v. Sherman, 105 Wis. 263; Bank v. North, 114 Wis. 637; Hackley v. Headley, 45 Mich. 569; Bank v. Sargent, 91 N. W. 597; Darling v. Hines, 5 Ind. App. 326; Newburyport Water Co. v. City, 103 Fed. 594; Douglas v. Kansas City, 147 Mo. 428; Walker v. St. Louis, 15 Mo. 563; State ex rel. v. Stonestreet, 92 Mo. App. 214. The mere customary sending out of notices, calling attention to the law, is not sufficient. Douglas v. Kansas City, 147 Mo. 428. Mistake is no part of this case. American Brewing Co. v. City, 187 Mo. 380. (8) Any other rule will confuse, hopelessly, mistake and duress. (9) This court cannot reverse upon the record below; and this court will not look to the memorandum of the trial court either to support or defeat the judgment below. Brecheisen v. Coffey, 15 Mo. App. 80; Kennard v. Peck, 19 Mo. App. 342; Mead v. Spalding, 94 Mo. 43; Hewitt v. Steele, 118 Mo. 463; Kreis v. Railroad, 131 Mo. 533; Kennedy v. McNichols, 29 Mo. App. 11.

VALLIANT, P. J.—Plaintiff sues to recover a sum which it is stated in the petition the plaintiff was compelled to pay for the use of water furnished the plaintiff by the city in excess of the rate prescribed by the city ordinance. By the provisions of the ordinance set out in the petition the meter rate for water, when the quantity used for purely manufacturing purposes exceeded an average of twenty-five thousand gallons per day, was one and one-fourth cents per hundred gallons, provided that when the quantity exceeded fifty million gallons annually the rate should be one

cent per hundred gallons. The petition stated that plaintiff used for purely manufacturing purposes within the time mentioned more than fifty million gallons annually, yet the city required plaintiff to pay one and one-fourth cents per hundred gallons.

This is the second appeal in this case. The former appeal was from the judgment sustaining a general demurrer to the petition; that judgment was reversed and the cause remanded. [Am. Brewing Co. v. St. Louis, 187 Mo. 367.]

When the cause went back to the circuit court, defendant filed an answer, the purport of which was a general denial and a plea that the plaintiff's payment was voluntary.

The cause was tried by the court, jury waived. The plaintiff's evidence showed that in order to obtain water from the city the plaintiff was required to take out a license for which it had to pay in advance for the estimated quantity likely to be used for the ensuing period of six months, and a new or renewed license was to be taken out and paid for in advance every six months. If at the end of a six-months' period a reading of the meter showed that the quantity used was either more or less than the estimate, the difference was adjusted and the account balanced to date. The plaintiff took out three licenses, each to cover a period of six months, the three covering a whole period of eighteen consecutive months, and paid for the same at the rate of one and one-fourth cents per hundred gallons, which was the rate it was required to pay. At the end of the time it was shown by the meter readings that plaintiff used more than fifty million gallons annually. The evidence also showed that after that period the licenses were issued to the plaintiff at the rate of one cent per hundred gallons.

On the former appeal it was held that the plaintiff was not precluded from recovering on the theory that

the payments made, under the circumstances above shown, were voluntary. The petition stated and the evidence showed that the plaintiff was dependent on the city for water, could not carry on its business without it and could not obtain it except by complying with the demands. The plaintiff perhaps could have taken out a license estimated on an annual consumption of fifty million gallons and have paid in advance therefor only one cent per hundred gallons, but if it turned out at the end of the year that less than fifty million gallons had been used plaintiff would have been liable to the city for the additional one-fourth cent per hundred gallons, and would have had to adjust the difference before taking out another license. The evidence showed that in the beginning the quantity likely to be consumed was a mere estimate, neither the plaintiff nor the assessor of water rates could know certainly what it would be, and the licenses were issued with the understanding that the differences between the estimates and the actual consumption shown by the meters were to be adjusted at the end of each six months' period. The plaintiff was not precluded on the theory that the payments were voluntary.

There remains but one question in the case and that is a question of fact: Was the water used purely for manufacturing purposes? The ordinance prescribing the rates says: "When the quantity used exceeds an average of twenty-five thousand gallons per day, one and one-fourth cents per hundred gallons. The meter rate for the use of water for purely manufacturing purposes and livery stables is hereby fixed at one and one-fourth cents per one hundred gallons; provided, that when the quantity used exceeds fifty million gallons annually by any manufacturing plant, located in one or more blocks adjoining each other, the rate shall be one cent per hundred gallons."

There was but one witness on that point, Mr.

Koehler, the president of the plaintiff corporation. His evidence was directed chiefly to the issue of voluntary payment. In his direct examination he was not questioned especially in reference to the purpose for which the water was used, but he stated in general terms that the manufacturing business in which he was engaged required great quantities of water and he obtained the water to be so used from the city; could obtain it from no other source. On cross-examination he was asked if all the water that passed through the meters was used in the manufacture of beer, he answered: "We used it for general manufacturing purposes connected with the manufacture of beer. It does not all go into beer. A great deal is used for the purpose of cooling and ice machines and so forth. Q. Was any of this water passed through those meters used for any purpose other than that connected with the manufacture of beer? A. No, sir. Q. There is a saloon, or was, on your property on Seventh street, is there not? A. Yes. Q. Where did that saloon get its water during this period? A. I do not know, I really do not. . . . Q. As far as you know is it not your best impression, Mr. Koehler, that that saloon was supplied with water from your plant? A. Well, I cannot say, I do not know whether they paid a separate license or not. Q. You would not swear a part of this water was not used by the saloon? A. No, sir; I would not testify either way, because I do not know." The witness was then asked about a stable, and if the water used in it was not a part of that which passed through these meters, and he said he did not know. That was practically all the evidence adduced to prove that all this water was used for purely manufacturing purposes. The trier of the fact thought it was not sufficient and found for the defendant on that issue. In a law case an appellate court does not, as a rule, review the evi-

dence further than to ascertain if there was any substantial evidence to support the finding.

The plaintiff was not entitled to recover unless the water was used for purely manufacturing purposes. That fact was an essential averment in the petition and it was traversed by the general denial in the answer. The burden of proof therefore was on the plaintiff.

It is argued that the court should have considered the fact that the ordinances in evidence made it the duty of the city officials to see that a license was not abused by the licensee suffering water to be used for a purpose other than that for which it was issued. The part of the ordinance above quoted shows that whilst the rate of one and one-fourth cents per hundred gallons is given for water to be used for manufacturing and livery-stable purposes when the quantity used exceeds twenty-five thousand gallons per day, yet that rate is not given exclusively for that purpose; the preceding sentence fixes that rate for all water in that quantity passing through the meters, without specifying for what purpose, and as the plaintiff's license called for the one and one-fourth cent rate it is at least questionable if the city officers had the right to prohibit the plaintiff using the water for any other purpose of its own than manufacturing. Of course they could have prevented the plaintiff from suffering any one else to use water coming through its meters.

The point is advanced that after the eighteen months which constitute the period in which this controversy arose the assessor of water rates recognized that the plaintiff was entitled to the one cent rate and gave it. But the evidence shows that Mr. Harris, the official who gave the rate, did so because it appeared from the books in the water-rates office that the plaintiff was using annually more than fifty million gallons of water. He was asked on cross-examination whether

he knew that all the water that passed through the plaintiff's meters was used for purely manufacturing purposes, and he answered that he did not know.

It is also argued that to defeat the plaintiff's claim it devolved on the city to show that the quantity of water that was used for the saloon or other purposes was enough to reduce the total quantity to less than fifty million gallons. That argument assumes that the burden was on the defendant to show that some and how much of the water was used for other than manufacturing purposes; but that is an erroneous assumption, the burden was on the plaintiff to show that the water it used was for purely manufacturing purposes.

The evidence, as we have seen, was very meager. The plaintiff in its testimony was directing its attention to the refutation of the defendant's plea that the payments were voluntary, and seems to have overlooked the question as to the use made of the water, and all the evidence that there was on that point came out in the defendant's cross-examination of the plaintiff's witness who was evidently not prepared to answer the questions, therefore in answer to the questions concerning the water used in the saloon and stable he said that he really did not know. On that testimony the court found that the plaintiff had failed to prove that all the water that passed through the meters was used for purely manufacturing purposes.

As we have already said, this is an action at law, and in such case the finding of the trier of the fact will not be disturbed if there is any substantial foundation for it in the evidence. This is true as well when the finding is against the party on whom was the burden of proof because of failure to make the proof, as it is where the finding was in his favor because he did make proof to support it. We do not mean to trench on that rule in this case, and although the testimony on

209 Sup—39

that point was very meager, and the point itself seems to have been overlooked in the effort to meet the other defense which was specially pleaded, and although to affirm a judgment based on a finding under such circumstances might not leave our minds entirely satisfied that complete justice had been done, yet we would be constrained to affirm the judgment unless it appears from the face of the record that an error of law entered into the finding of the fact. When Mr. Koehler, the president of the plaintiff corporation, was on the stand as a witness for the plaintiff he was, on cross-examination by defendant, asked this question: "Do you know whether or not you used any of the water that came through these meters in anything else than putting it in the beer you manufactured?" That question signified that to the mind of the counsel asking it, it was material to know whether the whole quantity of water that passed through the meters went into the beer that was manufactured and it implied that in the opinion of the interrogator only so much of the water that went into the composition of the beer could be deemed to have been used for purely manufacturing purposes. The witness answered in effect that it was all used in the business of manufacturing beer, though not all entered into the beer as one of its ingredients. It was not necessary for the plaintiff to prove that the water went into the composition of the beer; it was sufficient if it was used or consumed in the business of making beer, as said by Mr. Koehler, for example, cooling, ice machines and many other uses to which it might be applied. What view the court as the trier of the fact took of that question we of course do not know, as no instruction was asked or given on it, but the fact is the defendant brought out the evidence and it was in the mind of the court when the finding was rendered.

If the court took the view of the law as was implied in the question, if it gave weight to the testimony thus

adduced by the defendant—then an error of law influenced the finding of the fact.  The court may have disregarded this evidence and rested its finding on the fact that the evidence showed that there was a saloon on the premises and a stable near by and the plaintiff was unable to say what part of the water that passed through its meters was not used in supplying the saloon and the stable, but that we do not know.  We think that justice will be better satisfied with a new trial when these doubtful points may be cleared up.  The judgment is reversed and the cause remanded to be retried.  *Lamm* and *Graves, JJ.,* concur; *Woodson, J.,* dissents.