Leo V. BLADES and Mary Blades, his wife, Plaintiffs-Respondents,

v.

A. D. OSSENFORT and M. Ossenfort, a/k/a Mildred Ossenfort, d/b/a Ossenfort Realty Company, and George Foster, Defendants-Appellants.

No. 34274.

Missouri Court of Appeals, St. Louis District, Division Two.

May 23, 1972.

Sumner, Hanlon, Sumner, MacDonald & Nouss, St. Louis, for defendants-appellants.

Hanks & Bornschein, Clayton, for plaintiffs-respondents.

SIMEONE, Judge.

This is an appeal by the purchaser at a deed of trust sale and the trustee of a deed of trust from a judgment of the circuit court of St. Louis County entered on April 19, 1971 which granted the mortgagor-grantor the right to redeem the property upon condition that the grantor make payment of the debt and foreclosure costs. The judgment further denied the right of the purchaser at the trustee's sale to recover the premises. Cause No. 314061 was a suit filed by George Foster, the purchaser at the trustee's sale to recover the premises purchased and Cause No. 313993 was a suit to set aside the trustee's deed brought by Mr. and Mrs. Blades against Foster and Mr. and Mrs. A. Dudley Ossenfort. These causes were consolidated by the court in November, 1970. Trial commenced on February 16, 1971.

The grantors-mortgagors, Mr. and Mrs. Leo F. Blades (hereinafter referred to as the Blades) on or about April 18, 1968 executed a second deed of trust on lot 27 of Forestate subdivision, known and numbered as 7235 Forestate Drive in St. Louis County, to secure a loan of $2,000. The loan was arranged by A. Dudley Ossenfort of the Ossenfort Realty Co., and who is the husband of the trustee Mildred Ossenfort, employed by Schwaller Real Estate. Mr. and Mrs. Blades executed six promissory notes payable to Henry and Edna Tieman, truck gardeners, calling for payments on October 18, 1968 and every six months thereafter. The first note was paid, although somewhat late, and the second note was due and payable April 18, 1969. Several notices were sent by Mr. Ossenfort, acting on behalf of the Tiemans, calling attention to the fact that the April, 1969 note was due. When payment was not forthcoming on the second note, Mr. Ossenfort "turned" the matter over to the trustee, Mrs. Ossenfort, in May, 1969. When informed that the Blades were in default, she took the necessary steps, advertised the premises in the Watchman-Advocate for trustee's sale, and eventually cried the sale on the courthouse steps on June 10, 1969. The purchaser at the sale was George Foster (appellant), and one of the defendants in the Blades' action to set aside the trustee's deed, and who also was the plaintiff in an action against the Blades to recover the possession of the property he allegedly purchased at the sale. Mr. Blades was present at the sale, accompanied by his attorney. At the sale, a notice of intent to redeem was given to the trustee by Mr. Blades. Foster bid $2,000 for the property and assumed the first mortgage which was held by George Roeder. Foster and Mrs. Ossenfort testified that Foster purchased the property on his (Foster's) own behalf, "to live in," "to get a home for my wife and myself." After the trustee's sale, Mrs. Ossenfort issued a trustee's deed in favor of Foster which was recorded in September, 1969. The trustee's deed showed the address of George Foster, as 4621 Macklind Ave., the same address as the Ossenfort Realty Co. At the time of the sale there was a balance due of $2,064.13. Foster testified that he came to the courthouse on June 10, 1969 for the purpose of bidding on the property, that he was the only one who did so, that he did not buy the property "for or on behalf of Mr. and Mrs.

Tieman," nor Mrs. Ossenfort; that he obtained knowledge of the sale "through the Ossenforts" who he had known about three weeks before the property came up and that he paid the sum of $2,000 which his father gave to Mr. and Mrs. Ossenfort. He further testified that he had no financial interest on the deed of trust nor the notes. He has offered monthly payments to the holder of the first deed of trust since the foreclosure sale, but the check is returned because Mr. Blades makes the payments.

Mrs. Blades testified that she signed the deed of trust, but not in Ossenfort's office as testified to by Ossenfort, and that in February, 1970, Mr. Blades had a check in the amount of $2,000 drawn on Manchester Bank; that she had a conversation by telephone with Mrs. Ossenfort to get "this straightened up before he (husband) went in the hospital," but that Mrs. Ossenfort said she didn't know who bought the property but that Mrs. Blades would be notified in plenty of time, apparently to redeem the property. Mrs. Blades said that she did not know that the home was being foreclosed until she got a letter from the man who owned the first deed of trust and that Foster never made a demand for payment. After she received notice from the holder of the first deed of trust apparently in August, 1969, she spoke to Mrs. Ossenfort and she said the only reason she had to foreclose was because the man that held the first deed of trust was in bankruptcy and she "had to secure her investment." Mrs. Blades did not offer any amount of money due before February, 1970, but she told Mrs. Ossenfort that she had the money. She also testified that she never received any schedule of payments to be made under the deed of trust.

The testimony of Mr. Blades showed that when he wanted to make a loan on the property he went to the Schwaller Real Estate Company to obtain a second deed of trust and spoke to Fred Schwaller and Mildred Ossenfort overheard the conversation and thereafter she told him that her husband (Dudley) could place the loan to "forget about Fred Schwaller, deal with her husband, not Fred Schwaller." Later he received a loan from Mr. Ossenfort, paid, as he said, $100 in a tavern under the table for the loan.

One or two days prior to the foreclosure sale, Mr. Blades was told by Mrs. Ossenfort that the property was to be foreclosed and "for me to come by her office and that she would type up a letter; I could redeem my property." She said, "I don't want your property, I will work it out with you." Blades told her, "Well, can I pay my note now?" and she replied "No, your house is going to be foreclosed; there is nothing I can do to stop it." Mr. Blades said he had the cash, and talked to Mr. Ossenfort about stopping the foreclosure and was "going to talk to her (Mildred) see if he could stop the foreclosure." Mr. Ossenfort wanted to accept the money and stop the foreclosure, but "Mildred says it was too late."

The first mortgage was for $15,000; there was still a balance of $11,500 at the time of trial.

After the sale, Mr. Blades obtained a redemption bond which was subsequently challenged by Mrs. Ossenfort.

In February, 1970, Mr. Blades had a cashier's check in the amount of $2,000 and took it to Mrs. Ossenfort whom he met on the parking lot of Schwaller Co. and told her he had the money to pay the loan; he showed it to her but her reply was she didn't know "who I should pay it to; she says, 'Go and ask the Court.'" Mr. Blades offered "her the payment twice." At that time she refused the check saying, "Honey, you lost your house; that is it."

On another occasion, in April, 1969, according to his testimony he offered to pay the obligation at the race track at Cahoika, Illinois. He also testified that on several occasions he offered payment to Mildred but she always told him she did not know who bought the house at foreclosure.

The house, according to the evidence of Blades, had a market value of $32,500; that he was offered $28,500.

In the pleadings and at trial, the Blades tendered to defendants the amount of the loan and interest thereon and any other reasonable costs that they have incurred in the trustee's sale.

Trial was held and on April 19, 1971, the court rendered judgment for Blades in cause No. 314061 (Foster v. Blades) and in cause No. 313993 rendered judgment granting the Blades the "right to redeem upon payment of note, interest, foreclosure costs. The recorded Title Holder Foster upon so doing deed recorded September 5th, 1969, in Book #6416, Page 1266 cancelled and held for naught."

Following timely motions for new trial, which were overruled, the Ossenforts and Foster perfected their appeals to this court.

It is the contention of the appellants that the grantors of a deed of trust do not have a right of redemption under § 443.410 [1] unless the purchaser at the sale is either the holder of the debt or a person acting on behalf of the holder. The respondents (Blades) counter with the contention that, under proper circumstances, equity will grant relief by enforcing the right to redeem independent of the statute and the appellants-Ossenforts designed a scheme to acquire the Blades' real estate and fraudulently deprived the Blades of their home which they built and had lived in for seven years.

There are innumerable facets to the points raised on this appeal. One of the issues is whether a grantor of a deed of trust is entitled to set aside a trustee's deed or redemption when the purchaser at the foreclosure sale is one who is not the holder of the debt or one acting for the holder, under § 443.410. Another is whether the statutes furnish the exclusive remedy to set aside a foreclosure sale to redeem, or whether equitable principles ameliorate the statute, and whether the foreclosure sale is valid, and if not whether the purchaser can obtain title.

█ In an equity proceeding we are required to review the evidence de novo and arrive at a result which should have been reached on the evidence, giving due deference to the chancellor to judge the credibility of the witnesses, and the judgment of the chancellor is not to be set aside "unless clearly erroneous. . . ." Rule 73.-01(d), § 510.310.

The statutory scheme for redemption from foreclosure is governed by Sections 443.410–443.440. Section 443.410 provides that " . . . and all real estate which may be sold under any such power of sale in a mortgage deed of trust hereafter made and which at such sale shall be bought in by the holder of such debt or obligation or by any other person for such holder shall be subject to redemption by the grantor in such mortgage deed of trust . . . at any time within one year from the date of said sale; provided, however, that such person so entitled to redeem shall give written notice at the sale or within ten days before the sale to the person making . . . the sale of the purpose to redeem if the sale and purchase are so made; and provided further, that said grantor, . . . shall within said year pay the debt and interest or other obligation secured by such deed of trust and to accrue thereon together with all sums paid out by any holder thereof or purchaser at such sale . . . "

This section provides that all real estate foreclosed under a deed of trust which is purchased by or for the holder thereof, shall be subject to redemption within one year from the date of sale provided the owner of the equity of redemption give certain notice and that within the year pay the debt and interest or other obligation secured by such deed of trust. Furthermore, the mortgagor must within twenty days after the sale give security to the satisfaction of the court. Section 443.420. It has been stated that the "owner of an equity of

---

1. All references are to RSMo 1969, V.A.M.S. and V.A.M.R. unless otherwise indicated.

redemption can effect such a redemption only in the manner and on the conditions prescribed in the statutes and compliance with the statutes is essential." Euclid Terrace Corp. v. Golterman Enterprises, Inc., Mo.App., 327 S.W.2d 542, 545; State ex rel. Hanks v. Seehorn, 227 Mo.App. 666, 55 S.W.2d 714.

■ Since the early decision of Keith v. Browning, 139 Mo. 190, 40 S.W. 764, the statutory right of redemption does not exist where, on a trustee's sale, a purchaser other than the holder of the debt or someone on his behalf, purchases the property for himself and not for the holder of such debt, in the absence of "evidence of fraud upon the part of anyone connected with the sale of the property." Keith v. Browning, *supra,* 40 S.W. at 765. In such a case, the mortgagor does not have a cause of action for redemption. Dickey v. Barnes, Mo.App., 427 S.W.2d 732; see also White v. Huffman, Mo., 301 S.W.2d 824.

■ Where, however, there are circumstances giving rise to equitable relief, or there are equitable grounds, "courts of equity will grant relief in proper cases by enforcing the right to redeem, independent of and outside the statutes." Fitzpatrick v. Federer, Mo., 315 S.W.2d 826, 829 (arrangement designed to prevent free and fair competition among bidders); Potter v. Schaffer, 209 Mo. 586, 108 S.W. 60, 62. In such instances trustee's deeds have been set aside. Starr v. Mitchell, 361 Mo. 908, 237 S.W.2d 123; Alfred v. Pleasant, Mo., 175 S.W. 891 (holder told debtor they need not pay until notified); for a general discussion, see Dingus, Mortgages—Redemption After Foreclosure Sale in Missouri, 25 Mo.L.Rev. 261 and Note, The Debtors Relief After Sale Under Deed of Trust, 1950 Wash.U.L.Q. 617. This is a salutary principle for as has been said, foreclosure "by a trustee's sale is a harsh method of disposing of the equity of redemption, and should be watched with jealous solicitude." Leone v. Bear, 362 Mo. 464, 241 S.W.2d 1008, 1015.

Under the facts here, there are many cumulative items which the chancellor could, and did consider which would sustain his judgment. There is substantial evidence, the credibility of which was for the chancellor, which indicated that a few days prior to the trustee's sale, Mr. Blades offered to pay the Ossenforts and Mrs. Ossenfort replied, "No, your house is going to be foreclosed; there is nothing I can do to stop it." At that time Mr. Blades testified he had the cash. There was testimony that prior to the sale that Mr. Blades offered to pay the amount of the note due and the indebtedness. In a somewhat analogous case, where the mortgagor-grantor offered, prior to sale, the amount of interest due, our Supreme Court, In Potter v. Schaffer, *supra,* 108 S.W. l. c. 62, stated: "In other words, unless precluded by specific terms of the contract, the debtor may stop the sale under a deed of trust at any time prior to sale by the payment of the accrued interest and costs, or if payment is refused, and tender is made, the same end is reached. . . . Nor is it required in a case of this kind to plead or show anything further than the offer to pay. . . ."

■ The fact that there was an offer to pay prior to the sale is sufficient to stop the sale from being made so that the sale held in June, 1969 was improper.

Moreover, there were many other factors, however, that the chancellor in his discretion considered which authorized the judgment rendered, and which show that the judgment was not "clearly erroneous." There is no necessity to detail each and every one, but the evidence shows that Mrs. Ossenfort did not exercise that utmost good faith and indifference required of a trustee. Stone v. Stone, Mo.Sup., 176 S.W.2d 464, 467. There was evidence that Mrs. Ossenfort had to secure "her" investment; there was no schedule of payments ever given to Mr. and Mrs. Blades; the Tiemans had indorsed the notes "without recourse."

Since we prefer to rest this decision on the ground that the sale was improper

rather than on the ground of redemption after the sale, Foster, the purchaser, could not acquire a valid title even though he purchased the property for himself and not on behalf of the holders of the debt. It must be noted, however, that the value of the property ranged from \$28,500 to \$32,500. Mr. Foster bid \$2,000 and assumed the first mortgage, which at the time approximated \$11,000. While mere inadequacy of price may be insufficient to set aside a sale or redeem, additional circumstances coupled with inadequacy may well be sufficient to set aside the sale. (For discussion of adequacy see Hrovat v. Bingham, Mo.App., 341 S.W.2d 365); Daggett Hardware Co. v. Brownlee, 186 Mo. 621, 85 S.W. 545; and Dingus, *supra*.

Hence, taking all of the evidence in consideration, we cannot say that the trial court was "clearly erroneous" in rendering judgment upon the conditions specified. Furthermore, we reach the independent conclusion that such judgment was proper.

The judgment is affirmed upon the conditions specified in the order of the trial court rendered April 19, 1971.

DOWD, P. J., and SMITH, J., concur.