**130**

June I. MADDOX, Plaintiff-Appellant,

v.

**GREATER KANSAS CITY MENTAL HEALTH FOUNDATION, a non-profit corp., Defendant-Respondent.**

**No. KCD 26170.**

Missouri Court of Appeals,
Kansas City District.

May 7, 1973.

Herman M. Swafford, Kansas City, for plaintiff-appellant.

Robert L. Driscoll, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for defendant-respondent.

Before WASSERSTROM, P. J., and SHANGLER and SWOFFORD, JJ.

WASSERSTROM, Presiding Judge.

Plaintiff sues to recover the last month's pay allegedly due her under an employment contract for a one-year term ending July 31, 1969. On trial without a jury, the court entered judgment for the defendant, on a finding that plaintiff resigned effective June 30, 1969 by mutual agreement. On this appeal, plaintiff assigns the following four points of error: (1) that she did not resign by mutual agreement effective June 30, 1969; (2) that certain parol evidence should have been received to establish the term of the employment contract; (3) that a finding should have been made that plaintiff had an employment contract from August 1, 1968 through July 31, 1969; and (4) that the court should have found that defendant breached the employment contract by requesting plaintiff's resignation, effective June 30, 1969.

Plaintiff was initially employed by defendant's division, Institute for Pupil Study, as an educational psychologist in an innovative program for remedial help to school children having behavioral problems. She was hired pursuant to an exchange of letters in May, 1967 "at an annual salary of $10,500 beginning July 31, 1967". The letter offering employment also stated that defendant anticipated that plaintiff would receive "an annual increment" of approximately 5% and that she would be entitled to twenty days of "annual vacation". Plaintiff testified that there was an oral understanding that she was being hired on a yearly basis.

Plaintiff continued to work through August, 1968, at which time she was given a pay increase to an annual rate of $11,025 per annum. Although this increase was announced on August 14, 1968, it was made retroactive to August 1, 1968.

Considerable dissension developed in the early part of 1969 between defendant and the professional staff of its Institute for Pupil Study. The director resigned in January, 1969, and a new director took office. Certain changes proposed by the new director were rejected by the staff, but ultimately a compromise was agreed, under the terms of which no program changes would be put into effect until the end of the current school year, ending June 30, 1969. It

was further agreed as part of the compromise, that the operation in the following year would be in accordance with the desires of the new director, and that those members of the staff who could not accept those changes would resign.

Pursuant to that understanding, the director circulated a bulletin among all staff members, dated March 26, 1969, covering the subject "Plans for Fiscal Year July 1, 1969 through June 30, 1970". That bulletin stated that the new plan called for an operation of only two Area Centers, instead of three Centers as previously. The bulletin concluded:

"All staff members will be expected to function in the role for which they were recruited. It is necessary for us to know by April 30, 1969 whether or not you desire to continue your employment with the Institute. I suggest you discuss this with your Area Center Director and make a commitment as soon as possible."

The next development, so far as plaintiff is concerned, was a letter to her from the director dated May 6, 1969, in which the director called attention to plaintiff's failure to respond to the March 26 bulletin and went on to say that "We would then assume that you have plans for other employment. Interviewing of persons to fill the positions you now hold will begin immediately. If you are interested in re-applying for this position next year, you may feel free to do so."

A telephone conversation then followed between plaintiff and the director, in which plaintiff inquired whether she would be permitted to work until July 31. In response to that inquiry the director addressed a letter to plaintiff dated May 14, in which she advised that the question had been presented to the Administrative Staff and that:

"It was an Administrative Staff decision on Tuesday, May 13, that employment commitments were over through the fiscal year, June 30, 1969. Therefore, in order to complete your personnel action record we will need your written resigna-

tion effective as of June 30, 1969, in order that with your June check you can be paid for the vacation time that you have earned."

Then on June 2, 1969, four members of the staff, including plaintiff, joined in a four-page letter of protest addressed to defendant's general Executive Director. The initial paragraph characterized this letter as informal and unsolicited evaluations from people leaving the program. The letter then went on to set forth the program philosophy of the four author-staff members, and then concluded as follows:

"With no consideration given to Center III's philosophy, we were asked to change our mode of operation to conform to those of Centers I and II. When such a change was rejected there was then an explicit agreement between the new director and staff that the Center would continue to function as it had been until the end of the school year, but that the operation would be different the last year of the grant. It was also understood that staff who could not accept this would resign.

"We are leaving with a great sense of regret that the things we have seen as being most valuable in the program are being discarded * * *."

This exchange of communications came to an end with plaintiff's individual letter of resignation dated June 11, 1969, which reads in full:

"I am resigning as Educational Psychologist, Area Center III, effective at the end of my contract period, July 31, 1969. In accord with Dr. Teague's letter of May 14, 1969, my last working date will be June 30, 1969. With my June check I will expect pay for the vacation time that I have earned."

Additional light is shed upon the intention and understanding of the four protesting staff members, by the testimony of Mrs. Mensch, who was one of the four signators to the June 2, 1969 letter. Mrs. Mensch's

testified in connection with her resignation in June, 1969 "I believe a contract is a two-way thing and I did not agree with the change in philosphy [sic] and therefore felt that I had to resign at that point. *It was by mutual agreement that I left at the time I did."* (emphasis added)

In reviewing this court-tried case, the decision of the court below should be affirmed "unless clearly erroneous". Rule 73.01(d), V.A.M.R.; Blades v. Ossenfort, 481 S.W.2d 531, 534 (Mo.App.1972); Oliver v. Fisher, 430 S.W.2d 611, 613–614 (Mo.App.1968). Moreover, the appellate court must make all reasonable inferences in favor of the party for whom the trial court ruled. Barewin v. Gillette, 343 S.W.2d 78, 80 (Mo.App. 1961). Under the evidence summarized above, and applying the legal rules cited, the findings of the trial court are not clearly erroneous and must be affirmed. This requires the overruling of plaintiff's first and fourth points of error. Because of this conclusion, whether plaintiff had a contract for a definite period is immaterial, and therefore, it becomes unnecessary to rule on plaintiff's second and third points of error.

The judgment is affirmed.

All concur.