In the Matter of Henry BLUFORD, and Johnnie M. Bluford, a/k/a Mildred Bluford, Debtors.

Henry BLUFORD, and Johnnie M. Bluford, Plaintiffs,

v.

FIRST FIDELITY MORTGAGE CO., and Tyrus L. Frerking, Defendants.

Bankruptcy No. 83–00456–W–13.
Adv. A. No. 83–1223–W–13.

United States Bankruptcy Court,
W.D. Missouri, W.D.

May 1, 1984.

Kelly P. Finn, Legal Aid of Western Mo., Kansas City, Mo., for plaintiffs.

Alan E. South, Crews, Milliard & South, P.C., Kansas City, Mo., for defendant First Fidelity Mortg. Co.

Bernard B. Levine, Levine & Gamm, P.C., Kansas City, Mo., for defendant Tyrus L. Frerking.

## ORDER GRANTING DEFENDANT'S JOINT MOTION FOR SUMMARY JUDGMENT

DENNIS J. STEWART, Bankruptcy Judge.

The within action was filed by the plaintiff debtors as a "complaint to set aside foreclosure sale and cancel deed as a fraudulent transfer" in respect of a foreclosure and sale of debtors' residential property during a period of time after these chapter 13 proceedings were dismissed and before they were reinstated on motion of the chapter 13 trustee.

Although the defendants, in their answer to the complaint of the plaintiff, deny the plaintiff's assertion that the bankruptcy court has jurisdiction of this action "by virtue of 28 U.S.C.A. § 1334," this court construes this only as a denial that this court has jurisdiction under that particular

statute.[1] This construction is supported by the fact that the defendants have since sought to present this action on its merits to this court by moving for summary judgment pursuant to Rule 7056 of the Rules of Bankruptcy Procedure. If there is any question concerning jurisdiction, however, this court can only, under the current circumstances, transfer this action to the district court with a report and recommendation for judgment.[2]

1. As such, it may be a negative pregnant with an admission that jurisdiction in the bankruptcy court is proper.

2. The current enactment governing bankruptcy court jurisdiction, S. 2507, which extended the transition provisions from March 31, 1984, to April 30, 1984, appears to resurrect the same bankruptcy court jurisdictional statute which was stricken down in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), as being within the jurisdiction of only an Article III court. For the effect of section 404(b) of the Bankruptcy Reform Act of 1978 is expressly extended to April 30, 1984, by the new enactment. That section, in turn, provides that, during the period for which it is extended, the currently sitting bankruptcy judges "shall serve in the court of bankruptcy ... *in the manner prescribed by this title.*" (Emphasis added.). That title, Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, provides at sections 405(a) and (b) that the bankruptcy judges now sitting may exercise the "jurisdiction and powers conferred by," *inter alia,* section 241 of the Bankruptcy Reform Act, the same section which the plurality opinion in *Marathon, supra,* held to be within the competence only of an Article III court. Further, with respect to the type of matter at bar, it does not appear to be one involving "public rights" which a non-Article III court can properly adjudicate, because the United States is not a party hereto. Otherwise, the statute may be void as one beyond the power of the Congress to enact. It was held in *Marathon, supra,* 458 U.S. at 87, 102 S.Ct. at 2880, that "(s)uch a grant of jurisdiction cannot be sustained as an exercise of Congress' *power* to create adjuncts to Art. III courts." (Emphasis added.). See also the recent decision in *United States v. Woodley,* 726 F.2d 1328, 1331 (9th Cir.1984), to the effect "that the judicial power shall be exercised only by those enjoying article III protection." It has been said that "where the invalidity of an act or a portion thereof goes to the power of the legislature to enact the law, and not merely to the form of the enactment, no rights or correlative obligations may arise under such invalid statute." 16 Am. Jur.2d Constitutional law, section 257, p. 728 (1979). On the other hand, it has been held in other cases that the conferring of Article III powers upon a court is sufficient to make that court an Article III court if the judges of that court—as the bankruptcy judges now seem to be by virtue of the extension provisions of S. 2507, —appointed by the president. *Lockerty v. Phillips,* 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943); *Glidden v. Zdanok,* 370 U.S. 530, 538, 541, 82 S.Ct. 1459, 1466, 1468, 8 L.Ed.2d 671 (1962) (holding that, even when judges of a federal court were not "invested upon confirmation with Article III tenure and compensation," 370 U.S. at 538, 82 S.Ct. at 1466, they may become so invested "depend(ing) upon the constitutional status of the courts to which they were primarily appointed." *Id.* at 541, 82 S.Ct. at 1468). It may ultimately be held that the bankruptcy courts were, during this transition period, either article III courts or the statute was void, but it is speculative and unclear at the present moment what the courts will hold in the future. Nor does it appear to save the legislative scheme that it may permit the bankruptcy judge to file a report and recommendation for judgment with the district court. It is the optional power, which rests with him to enter a judgment which the plurality in *Marathon* condemned—that "the bankruptcy courts issue final judgments which are binding and enforceable even in the absence of appeal." 458 U.S. at 85–86. 102 S.Ct. at 2879. But, nevertheless, the filing of a report and recommendation for judgment, if there is any question respecting jurisdiction, may be the best method of protecting the parties and the court.

It must be mentioned in the matter at bar that, before the onset of the effective date of S. 2507, when no statute purported to confer jurisdiction directly on the bankruptcy court, that court does not appear to have had jurisdiction by means of any statute. Therefore, it appears that the court did not then have jurisdiction by means of any conferral of the federal judicial power, which must necessarily be by statute. "All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to 'ordain and establish' inferior courts, conferred on Congress by Article III, section I, of the Constitution." *Lockerty v. Phillips, supra,* 319 U.S. at 187, 63 S.Ct. at 1022. Rather, jurisdiction of the bankruptcy court at the time of the dismissal of the within chapter 13 proceedings and consequent grant of relief from the automatic stay, was simply the *inherent* jurisdiction of a court of equity to administer and distribute a *res* in its possession. See, e.g., *Matter of Isis Foods, Inc.,* 26 B.R. 122 (Bkrtcy.W.D.Mo.1983); *Matter of Brown,* 26 B.R. 119 (Bkrtcy.W.D.Mo.1983). If this action were looked upon as one to enforce or interpret the court's former orders dismissing the chapter 13 case and granting relief from the automatic stay, the same jurisdiction may inhere in this court. "That a federal court of equity has jurisdiction of a bill ancillary to an original case or

■ The following facts, otherwise, are established by the pleadings in this action:

1. Plaintiffs filed their petition for relief under chapter 13 on February 23, 1983.

2. They then scheduled lot 85 and the north 80 feet of lot 86, Prospect Vista, commonly known as 5636 Bellefontaine, Kansas City, Missouri, as their residential property, subject to a valid and perfected security interest of the defendant First Fidelity Mortgage Company.

3. A plan of arrangement was confirmed on May 2, 1983.

4. On August 2, 1983, the chapter 13 trustee moved to dismiss the chapter 13 proceedings because plaintiffs were in default in making payment under the confirmed plan. On August 27, 1983, the court granted this motion and dismissed the chapter 13 proceedings.

5. On September 1, 1983, plaintiffs filed a motion to alter or amend the order of dismissal. The court entered an order on September 20, 1983, reinstating the plaintiffs' plan on condition that they cure all defaults within seven days, which they failed to do.

6. A foreclosure sale of the abovementioned residential property was conducted on October 13, 1983, at which the defendant Frerking was the sole bidder and purchased the property for a price of $8,418.63. The trustee's deed was the same date issued to the defendant Frerking.

7. On November 18, 1983, the chapter 13 trustee moved to set aside this court's order of dismissal[3] and reinstate the chapter 13 proceedings.

8. The proceedings were reinstated by the court on November 22, 1983.

The plaintiffs, contending that they had a considerable equity in the premises,[4] now seek to have the foreclosure sale nullified and undone on the grounds that it was a fraudulent transfer made within a year of the commencement of their chapter 13 case.[5] As noted above, the defendants have moved for summary judgment in their favor. This court believes their motion to be meritorious on the issue of whether the transfer is now avoidable as a fraudulent transfer or a preference. The foreclosure, as the uncontested facts established by the pleadings demonstrate, did not take place prior to the commencement of a chapter 13 case, but rather after its dismissal and before its reinstatement under circumstances, as detailed below, which were equivalent to a grant of relief from the automatic stay for the purpose of accomplishing the foreclosure. With the dismissal of the case on September 28, 1983, upon the debtors'

---

proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled ... And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard (to other jurisdictional prerequisites)." *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 696, 78 L.Ed. 1230 (1934).

3. It is noteworthy that the initial impetus to set aside the dismissal was undertaken by the chapter 13 trustee, not the debtors.

4. It is alleged that the property was worth approximately $11,000 more than the approximately $8,000 which it brought at the foreclosure sale.

5. They contend in their brief that "the court's order of November 22, 1983, began the case anew and constituted a new filing of the petition in the instant case for purposes of 11 U.S.C. section 548 and section 522(h) of the Bankruptcy Code, in that recovery by the debtor of assets necessary for performance under the Chapter 13 plan is furthered by this interpretation. Debtors clearly have the right to voluntarily dismiss under 11 U.S.C. 1307(b) and refile the same petition, and the same complaint to set aside the foreclosure sale, but such an approach would be judicially inefficient, and serve no purpose." It is perhaps to prevent such misuse of the judicial process that the courts have fashioned the rule that a chapter 13 debtor does not have the same avoiding powers as a trustee in bankruptcy.

failure to cure all defaults,[6] the automatic stay was terminated. See section 362(c) of the Bankruptcy Code.[7] It does not, as do certain other stays, continue in effect for ten days following the order of dismissal. See *In re De Jesus Saez,* 721 F.2d 848 (1st Cir.1983).[8] Accordingly, at the time the foreclosure sale took place, neither the automatic stay nor any other stay or injunction was in effect. The debtors did not then seek to refile or reinstate their chapter 13 case or seek an injunction or restraining order from the bankruptcy court. In fact, they took no action at any time. Had they done so, the new proceeding would likely have been dismissed as an effort, in effect, to reinstate the former proceeding without obtaining leave of court, a rule which is invoked particularly for the purpose of preventing unwarranted interference with foreclosure proceedings and other creditor actions which can take place after lifting of the automatic stay.[9] The later reinstatement of the case, granted by the court purely as a matter of grace and not of right, cannot be regarded as the commencement of a proceeding for the purpose of § 548, *supra.*[10] The fact that reinstatement of a chapter 13 case on motion of the chapter 13 trustee does not equal the commencement of a case for the purpose of recovery of a fraudulent transfer under

§ 548 or a preference under § 547 of the Bankruptcy Code is made clear by the letter of those respective sections. That letter, in both sections, equates commencement with "the date of the filing of the petition."[11] "Petition" clearly has reference to the petition for relief filed by a debtor under title 11 of the United States Code and not to any subsequent application, petition, or motion for relief. And, in this case, in fact, the motion which resulted in the reinstatement of the chapter 13 proceedings was not filed by the debtor, but rather by the chapter 13 trustee. Accordingly, because the transfer which is the subject of this action was not made *"before* the date of the filing of the petition" (emphasis added) within the meaning of §§ 547 and 548, *supra,* it cannot be considered as one possibly coming within either section.

▪ The plaintiff protests that such a holding as this can only delay the inevitable; that it is still within his power voluntarily to dismiss these chapter 13 proceedings and refile them by actually filing a new petition in order to be able to challenge the transfer as fraudulent or preferential.[12] It is perhaps to forestall such potential abuse of the chapter 13 proceedings that some courts have held that a chapter 13 debtor does not have the avoiding powers of a trustee.[13] The rule ap-

**6.** Dismissal, according to the terms of the order, was to take place immediately upon failure of the condition, without the necessity of any further order of this court.

**7.** Upon dismissal, the property which is the subject of this action was "no longer property of the estate" within the meaning of section 362(c)(1) of the Bankruptcy Code.

**8.** "We hold ... that the courts below erred in ruling that the automatic stay continued for ten days beyond the May 11 dismissal." 721 F.2d at 852.

**9.** Cf. *Buffington v. First Service Corp.,* 672 F.2d 687, 688 (8th Cir.1982).

**10.** The potential for abuse if such were the case is all too obvious. Cf. note 5, *supra.* The law of bankruptcy does not permit the refiling of cases for the purpose of frustrating foreclosures and other lawful actions of the creditors, particularly when the prior dismissal, as in the case at

bar, was either for the debtor's defaults or was a voluntary dismissal.

**11.** See §§ 547(b)(4)(A) and 548(a) of the Bankruptcy Code.

**12.** In this regard, debtors state in their posttrial brief that they "clearly have the right to voluntarily dismiss under 11 U.S.C. § 1307(b), and refile the same petition, and the same complaint to set aside the foreclosure sale."

**13.** "Were lien avoidance powers concurrently held (by a trustee and a debtor), the trustee *would effectively lose control over lien avoidance litigation.* That result should be avoided, particularly if it is reachable only by implication. When Congress intended debtors to exercise the powers of a trustee in Chapter 11, it explicitly so stated in section 1107(a). Presumably, a section analogous to section 1107(a) would be present in Chapter 13 if that were the congressional intent." *In re Carter,* 2 B.R. 321, 322 (Bkrtcy.D.Colo.1980). There is some au-

pears to have some appropriate application in chapter 13 proceedings in which the debtor retains possession of the "property of the estate" and its recovery is therefore not for the purpose of benefitting or protecting creditors.[14] This court previously permitted chapter 13 debtors to exercise the avoiding power of a trustee when the challenged transfer had been involuntary and the circumstances of the case demonstrated that, after attempting to prevent the transfer, the debtors quickly engaged the processes of the bankruptcy court.[15] These circumstances do not appear to exist in this case. Nor need the court conduct a hearing to determine whether these circumstances exist when, for the reasons stated above, the transfer is not recoverable either under §§ 547 or 548. When the law prohibits the repeated filing of dismissed cases for no other reason that to frustrate a foreclosure, the court need not, in this case, postulate the possibility that the debtors could grant themselves standing to challenge those transfers, simply by dismissing these proceedings and refiling them.

This is not to say that the debtors do not have standing under the state law to bring a suit in equity to set aside the foreclosure sale by showing either "gross inadequacy" of price or else simple inadequacy of price together with other "invalidating factors." *Jackson v. Klein,* 320 S.W.2d 553, 559 (Mo.1959); *Blades v. Ossenfort,* 481 S.W.2d 531, 536 (Mo.App. 1972); *Matter of Fountain,* 32 B.R. 965, 968, nn. 8, 9 (Bkrtcy.W.D.Mo.1983). The

case at bar, in which the plaintiffs refer only to the inadequacy of price, without mention of any other invalidating factors, cannot be regarded as having any *res judicata* effect on their right to bring in equity in a state court under state law. And, further, under any theory of bankruptcy court jurisdiction, now that the property in question can no longer be considered property of the chapter 13 estate, the bankruptcy court cannot be considered to have jurisdiction of any action to set aside the foreclosure sale.[16] The debtors, by reason of their current inability to recover under §§ 548 or 547 of the Bankruptcy Code can lay no claim to any right to be heard on this issue in the bankruptcy court. But they may file it in an appropriate state court.

Accordingly, for the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that the defendants' motion for summary judgment be, and it is hereby, granted and the within complaint for relief is accordingly denied.

---

thority to the contrary, see, e.g., *In re Boyette,* 33 B.R. 10, 11 (Bkrtcy.N.D.Tex.1983). But, in the action at bar, when the debtors had it within their power at the time of the foreclosure to seek timely reinstatement of the chapter 13 proceedings and reimposition of the automatic stay and when, furthermore, the prior dismissal was for their noncompliance with their own plan and the court's orders, the transfer cannot be regarded as an *involuntary* transfer such as is ordinarily necessary to permit a debtor to take over the trustee's avoiding powers. See section 522(g)(1) of the Bankruptcy Code. In chapter 13, the trustee's not exercising the power, within the meaning of section 522(h) is meaningless, when the property of a chapter 13 estate does

not exist for the benefit of creditors, but rather "the debtor shall remain in possession of all property of the estate." Section 1306(b) of the Bankruptcy Code. Thus, the principle of creditor protection is inapplicable in this case.

**14.** See § 1306(b) of the Bankruptcy Code.

**15.** See, e.g., *Matter of Fountain,* 32 B.R. 965 (Bkrtcy.W.D.Mo.1983), where the debtor filed its chapter 13 petition and action to set aside the foreclosure sale shortly thereafter.

**16.** See note 1, *supra.*